**SEALOL CORPORATION, Plaintiff,**

v.

**FLEXIBOX, LIMITED, and Waukesha Bearings Corporation, Defendants.**

Civ. A. No. 558–64.

United States District Court

District of Columbia.

June 16, 1965.

Ralph L. Chappell, Kenyon & Kenyon, New York City, Laidler B. Mackall, Steptoe & Johnson, Washington, D. C., for plaintiff.

J. Philip Anderegg, New York City, Pennie, Edmonds, Morton, Taylor & Adams, Washington, D. C., for defendants.

JACKSON, District Judge.

This civil action came on for hearing October 6, 1964. A motion by the defendant for a preliminary injunction had been granted earlier on August 7, 1964. The case was reopened later on December 17, 1964 in order to take additional testimony. The parties filed extensive briefs, and after considering them, along with the evidence, the Court has found in favor of the plaintiffs, holding the defendant's patent to be invalid.

In accordance with Rule 52(a), Federal Rules of Civil Procedure, the Court states its Findings of Fact and Conclusions of Law separately as follows:

### FINDINGS OF FACT

1. This is an action for a Declaratory Judgment that a United States Patent reissued to Porges (Re. 23,189) for a Mechanical Seal dated January 10, 1950 is invalid and not infringed by the plaintiff.

Defendant has counterclaimed, charging the plaintiff with infringement.

2. Plaintiff, Sealol Corporation, is a corporation organized and existing under the laws of Delaware having its principal offices located at Warwick Industrial Park, Providence 5, Rhode Island.

3. Defendant Flexibox Limited, is a company organized and existing under the English Companies Act with its principal offices located at Nash Road, Trafford Park, in the City of Manchester in the United Kingdom of Great Britain and North Ireland.

4. Defendant, Flexibox Limited, is the owner of said Reissue Letters Patent and has charged plaintiff with infringement of said patent whereby a controversy has arisen between the parties.

5. Plaintiff was licensed under the patent in suit from 1954 to late 1963.

6. Upon termination by Flexibox Limited of the license to plaintiff in late 1963, plaintiff obtained opinions to the effect that the patent was invalid. Plaintiff continued to make, use, and sell seals of the same kind as those which it had previously made under the patent as a licensee.

7. This action arises out of an actual controversy between the parties under the Patent Laws of the United States and this Court has jurisdiction of the parties and the subject matter of this action by virtue of Title 28 U.S.C. §§ 2201, 2202 and 1338 and Title 35 U.S.C. § 293.

8. The patent itself is for a mechanical seal for making a fluid-tight joint between a revolving shaft such as a pump shaft and a stationary surface such as a pump housing.

There is a fixed seal ring, through which the shaft extends, a rotary seal ring disposed around the shaft and engaging the fixed seal ring, and a coil spring surrounding the shaft and serving both as a means for pressing the rotary seal ring tightly against the fixed seal ring and as a means for driving the rotary seal ring so that it will rotate with the shaft when it rotates.

One end of this spring is connected to the shaft with an interference fit, i. e., a tight fit resulting from the spring having a smaller inner diameter than the portion of the shaft or sleeve thereon over which it is fitted. The other end of the spring is connected with the rotary seal ring through an extension sleeve which projects from the rotary seal ring and which is tightly fitted into the other end of the spring with an interference fit.

The convolutions of the spring are of such hand with respect to the direction of rotation that any tendency of the rotary seal ring to turn relatively to the revolving member causes the spring to more tightly grip the parts which have interference fit with its ends, and this resists any such tendency toward relatively rotary motion between the rotary seal ring and the shaft.

Leakage along the shaft is prevented by a rubber O-ring which fits in a groove on the inner surface of the rotary seal ring and which tightly fits the shaft.

9. Claim 1 of the Porges Reissue Patent Re. 23,189 may be considered as typical. It is as follows:

1. A mechanical seal for making a fluid-tight joint between a revolving member and a stationary surface comprising, in combination, a coil spring around the revolving member, a rotary seal ring around the revolving member, a stationary surface against which the rotary seal ring bears under the pressure of said spring, characterized in, that one end of the spring has an interference fit with a part of the re-

volving member and the other end an interference fit with a part of the rotary seal ring, the convolutions of the spring being of such hand with respect to the direction of rotation that any tendency of the rotary seal ring to turn relatively to the revolving member causes the spring to more tightly grip the parts which have interference fits with its ends and resist such tendency, the coil spring and interference fits constituting a sole means for causing the seal ring to turn with the revolving member.

10. The original claims in the Porges application did not call for the interference fit between the spring and the shaft and the rotary seal. The Examiner rejected the claims on the prior art and the patentee cancelled the original claims and inserted claims very similar to the claims of the reissue patent; they specified an interference fit between the spring, the shaft, and the rotary seal ring.

Porges argued that these claims were patentable over the prior art because they specified that there be an interference fit instead of a tang drive between the spring and the shaft and rotary seal. The patentee said:

"Neither of the citations shows the feature which is the essence of the applicants invention namely a spring which at one end is an interference fit upon the revolving member and at the other end is an interference fit upon a part of the rotary seal ring, with the hand of the spring such that any tendency of the rotary seal ring to turn relatively to the revolving member winds up the spring so that it grips the parts which are interference fits in its ends and so resist such tendency.

This is a most important point for the spring transmits only a torque to the rotary seal ring with no tendency to tilt the seal ring or to move it sideways in relation to the stationary seal ring.

\*   \*   \*   \*   \*   \*

In the Endebak citation, the drive between the drive collar 15 on the

shaft and the thrust collar 15 is effected by the bent over ends of the spring 14. With this arrangement, when the spring tightens or slackens, a tilting movement is imparted to the collar 15 which results in rapid deterioration of the seal. It will be appreciated that the seal ring 1 has to be free upon the shaft, the joint being made by the static seal 13.

In applicant's construction, the spring grips the parts in its ends and cannot turn relatively thereto so that there is no tilting or sideways movement given to the rotary seal ring as in the citations."

Apparently, the Examiner did not question these representations.

11. The Porges representations that there would be no tilting or sideways movement given to the rotary seal ring is not in accordance with fact. The fact is that significant tilting and sideways movement does occur.

12. It is inherent in a seal, such as that of the Porges reissue patent, that the interference fit will introduce both a tilt and a lateral movement to the rotary seal ring. In addition to the initial tilting and lateral movement imparted by stretching the spring to put it into an interference fit with a corresponding member, the tilting is increased as torque is applied.

13. The tilting or sideways movement imparted to a rotary seal member by a tang fit was not proved to be greater than the tilting or sideways movement imparted by an interference fit. In fact, it was shown that when torque is applied, the tilt in the interference fit seal may be materially greater.

14. There was no long standing problem which had defied solution and which was solved by the Porges patent. The Porges seal did not displace any prior art seal.

15. The prior art references cited to show invalidity of the Porges patent were a United States patent to Endebak, No. 2,411,509, a United States publication by Taco, a United States publication de-

scribing a "Spring Clutch", a German patent, No. 698,193, to Goetzewerke, and a German publication by Die Packung which described the Goetzewerke seal.

16. "The Spring Clutch" (1939) is a publication which shows the concept of employing a sleeve such as the sleeve 5 of Porges for establishing an interference fit with a coil spring in a drive such as Porges. In this publication, both a gear and another member involved in the drive are provided with sleeves like the sleeve 5 of Porges which are fitted into the ends of a coil spring. The hand of each is so disposed that the spring is tightened when the drive is rotated.

17. The Taco prior public use and sale was of a pump with a seal and a drive which consisted of a coil spring and two fittings, each composed of a collar for attachment to a shaft and a sleeve like the sleeve 5 of Porges fitted with an interference fit into the ends of the spring. The hand of the spring was such as to tighten when the pump was driven. The tension of the spring was used to hold the seal in place.

18. Endebak patent shows a stationary seal ring, a rotary seal ring, and a coil spring which serves both to rotate the rotary seal ring with the shaft and to press the rotary seal ring against the stationary seal ring. An O-ring corresponding to the O-ring of the Porges patent is disposed in a groove in the rotary seal ring.

The connection between the spring and the shaft and rotary seal ring are by means of tangs on the ends of the spring. These tangs fit into recesses in the rotary seal ring and in a collar secured to the shaft.

19. The Goetzewerke seal of German patent No. 698,193 (and the Die Packung publication) is a mechanical seal for providing a fluid-tight joint between a revolving member and a stationary surface. It has, in combination, a coil spring around the revolving member or shaft, a rotary seal ring around the shaft, and a stationary seal ring or surface against which the rotary seal ring bears under pressure of the spring. One end of the spring has an interference fit with the shaft, and the convolutions of the spring are of such hand that the tendency of the rotary seal ring to turn relatively to the revolving member causes the spring to more tightly grip the shaft.

The Goetzewerke seal differs from Porges insofar as the connection between the rotary seal ring and the spring is not an interference fit. Rather, it is a tang on the spring which fits into a slot in the rotary seal ring.

The German patent states that the spring bears against a collar on the shaft and against the rotary seal ring to press said ring constantly against the stationary seal and "optionally" that the spring is effective to bear on a compressible seal in the ring to make it effective for sealing axially, i. e., along the shaft as does the O-ring of the Porges patent.

Although the German patent states that the rotary motion of the spring is transmitted to the rotary seal by the tang, it also says: "The connection of the spring at this point with the rotation ring could, of course, be effected in other ways; the bendings of the end of the spring is here chosen only by way of example."

Although the spring is conical, the last turn at each end lies in a plane perpendicular to the axis of the spring. On the shaft end of the spring this last turn is made perpendicular so that it can grasp the shaft with an interference fit. At the other end this permits the spring to bear against the compressible packing. If, however, one desired to connect this end of the spring to a rotary member with an interference fit it would only be necessary to insert the rotary member or a collar such as the collar shown in the article entitled "The Spring Clutch", in this last coil of the spring.

The statement in the German patent that the right angle coil at the other end of the spring surrounds the shaft tightly and that upon rotation of the shaft entrainment of the spring is assured, followed by the statement that theretofore entrainment of the spring was achieved

by bending the end of the spring to form a tang for insertion in a hole in the shaft, coupled with the immediately following statement that the use of the spring in the manner indicated provides a packing of maximum simplicity "both in construction of the parts and in assembly and disassembly thereof", would tell a man skilled in the art to use the interference fit with its clear advantages.

It would not require inventive skill or creative talent beyond that of the ordinary designer to do this in view of the German patent's instruction that "the connection of the spring * * * with the rotary ring could, of course, be effected in other ways." The patent itself shows that the spring can be connected to a rotary member in this very manner.

20. It would have been obvious to utilize, in the Goetzewerke seal, the interference fit connections shown in the publication entitled "The Spring Clutch", or the fit used by Taco, simply by providing the part to be connected to the spring with a sleeve extension like the sleeve 5 of the Porges patent.

21. Each of the elements in the Porges patent was shown either in the German patent, the Die Packung publication, the publication entitled "The Spring Clutch", or in the Endebak patent. Each of these elements in Porges performs the same function it performed in the prior art.

22. No new or unexpected result accrued from combining the old elements of Porges. The case of assembly and simplicity of parts was taught by the German patent 698,193. The alleged advantages relative to tilting or sideways movement of the rotary seal ring were nonexistent.

23. During the time when plaintiff was licensed by Flexibox, an action was instituted by Flexibox and plaintiff against Hydrovalve Co., Inc.

An agreement to settle was entered into in which Hydrovalve agreed to pay $300.00 as damages and agreed to a license.

A consent judgment was entered reciting these facts.

It is clear from the judgment that nothing was actually adjudicated, and there is nothing in the record to show that plaintiff received anything under the judgment either by way of payment or by way of an injunction, and the record is further silent as to whether plaintiff received anything under the settlement agreement.

## CONCLUSIONS OF LAW

■ 1. The presumption of the validity of the patent has been effectively overcome with prior art more pertinent than any considered by the Patent Office and by disproving representations made to the Examiner as to the Porges seal.

2. The invention of the Porges reissue patent 23,189 did not involve the exercise of inventive skill and creative talent beyond that of the ordinary designer in view of Goetzewerke seal exemplified by German patent 698,193 and the Die Packung publication, particularly in view of the publication entitled "The Spring Clutch" and the Taco prior public use and sale.

3. The combination of the Porges reissue patent was obvious and not an invention within the patent statute (35 U.S.C. § 103) in view of German patent 698,193, the Die Packung and The Spring Clutch publication, the Taco prior use and Endebak 2,411,509.

4. The commercial history of the Porges invention does not warrant the conclusion that it was not obvious or inventive.

5. The patent here claims a combination of old elements each of which performs only the function which it performed in the prior art. No unusual or surprising result arises from the assembly of these old elements.

6. The Sealol device uses the same principles as the patented device, and infringes it.

■ 7. The consent judgment against Hydrovalve does not estop the plaintiff from contesting the validity of

the patent because the Court in the Hydrovalve case was performing an essentially administrative function in recording an agreement reached between the parties.

 There can be no collateral estoppel as to questions which were not actually litigated.

 Ordinarily, there is no estoppel between parties who were not adverse parties.

Plaintiff is not estopped by agreement.

8. Plaintiff shall have judgment that the Porges reissue patent 23,189 is invalid, and the counterclaim shall be dismissed.