**KASPAR WIRE WORKS, INC., et al., Plaintiffs-Appellants,**

v.

**LECO ENGINEERING AND MACHINE, INC., et al., Defendants-Appellees.**

No. 76–2001.

United States Court of Appeals, Fifth Circuit.

June 21, 1978.

---

Stefan M. Stein, Tampa, Fla., for plaintiffs-appellants.

Norman H. Stepno, Arlington, Va., James P. O'Shaughnessy, Bacon & Thomas, Arlington, Va., for defendants-appellees.

Before GOLDBERG, HILL and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This patent infringement case, involving a type of latch used on coin-operated newspaper vending machines commonly found on street corners, is the third suit relating to the validity of patented devices embodied in the respective products of two competitors. The trial court held that a consent judgment dismissing a prior suit brought for a declaratory judgment of patent invalidity and non-infringement did not bar or estop the defendants from contesting the validity of the plaintiff's patent in this suit; it then held the patent invalid for obviousness. Because the court's conclusion

with respect to the dismissal of the earlier suit was correct, and the conclusion as to patent validity is supported by the evidence, we affirm.[1]

## I. The Facts

Kaspar,[2] the plaintiff, and Leco,[3] the defendant, have been competitors for more than ten years. Kaspar first sued Leco for infringement of another patent, number 177.[4] Leco then began a suit against Kaspar, seeking a declaratory judgment that patent 608[5] was invalid. After trial of the first suit, but before judgment in it became final, Kaspar and Leco agreed to settle Suit No. 1. Part of their agreement was that Leco would dismiss Suit No. 2. This was accomplished in April, 1973.

A year later, Kaspar filed this suit, the third court entry, against Leco for infringe-ment of Patent 608. Admitting that if Patent 608 were valid it had committed infringement, Leco rested its defense on patent invalidity. Kaspar contended that the earlier decree dismissing Suit No. 2 was *res judicata* as to the validity of Patent 608, or, if not, that it collaterally estopped Leco from attacking the validity of that patent.[6] Finally, it asserted the validity of the pat-ent.

The parties' consent to the entry of judg-ment in Suit No. 1 referred to the dismissal of Suit No. 2 simply as "with prejudice" and the judgment in Suit No. 2, the declara-tory proceeding, stated only that it was dismissed "with prejudice." In discussing their agreement with the court in Suit No. 1 (the suit in which agreement was reached), the following statement was made to the court by counsel for Leco:

1. The trial court's conclusions of law are sub-ject to complete review. *United States v. Sing-er Manufacturing Co.*, 1963, 374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823, 837; *Bac-kar v. Western States Producing Co.*, 5 Cir. 1977, 547 F.2d 876, 880; *Theriault v. Silber*, 5 Cir. 1977, 547 F.2d 1279; *LeBlanc v. Two-R Drilling Co.*, 5 Cir. 1976, 527 F.2d 1316, 1320; *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 5 Cir. 1977, 549 F.2d 368, 384. Although the question of obviousness is one of law, its resolution requires factual inquiries. Findings of fact in patent cases, like those in other areas of law, are tested on appeal under the limitations of the clearly erroneous review standard of Federal Rule of Civil Procedure 52(a). *See, infra*, at IV.

2. This suit was instituted by Kaspar Wire Works, Inc., licensee of the patent in question, which was issued to the sole patentee, Karl Knickerbocker, who later voluntarily joined as plaintiff. For convenience, both plaintiffs will be referred to in this opinion as "Kaspar."

3. The defendants in this suit are Leco Engineer-ing and Machine, Inc., a Florida corporation that manufactures newspaper vending ma-chines; Leco Sales and Service, Inc., a Florida corporation that sells newspaper vending ma-chines; and Carl C. Obendorf, treasurer of Leco Engineering and Machine, Inc. For con-venience, all defendants will be referred to in this opinion as "Leco."

4. Patent Number 3,265,177.

5. Patent Number 3,174,608.

6. The history of the litigation between Kaspar and Leco is illustrated on the following chart, stipulated by the parties:

| Suit # 1 | Kaspar v. Leco Infringement Patent 177 | Trial & Judgment | Consent to Entry of Final Judgment |
|---|---|---|---|
| Suit # 2 | Leco v. Kaspar Declaratory Judgment Patent 608 | Dismissal with Prejudice by Leco | |
| Suit # 3 | Kaspar v. Leco Infringement Patent 608 | Trial & Judgment Patent Held Invalid | |

. . . I'd like also to put on the record the discussion we had with regard to the declaratory judgment action [Suit Number 2], so there is no—it is with prejudice, which means that we will not bring a declaratory judgment action against Kaspar or Knickerbocker on their patent; but that, should we be sued, we are free to challenge validity.

It is thus apparent that the parties did not stipulate to the validity of Patent 608 or its infringement by Leco. However, more than one year having elapsed, it is now too late, under the provisions of Rule 60(b), Federal Rules of Civil Procedure, to amend the judgment of dismissal with prejudice. We need not consider whether a separate action to relieve Leco from it under the next-to-last sentence of that rule, the full text of which is set forth in the footnote,[7] would lie, for that issue is not before us. But we must here consider both the effect of the consent judgment as preclusive of Leco's right now to contest the validity of Patent 608, and its effect with respect to damages that may have been incurred by infringement of the patent prior to entry of judgment.

## II. Res Judicata

As the factual account indicates, the judgment that is contended to have preclusive effect was entered as a consent decree in a declaratory judgment proceeding involving a question of alleged patent invalidity. We must examine the significance of each ingredient in this mix in turn.

■ Kaspar urges that the dismissal of Leco's declaratory action "with prejudice" must be deemed a final adjudication of the merits of Leco's "claim" of patent invalidity, thus precluding Leco here from relitigating its "claim." In a conventional suit for common law or equitable relief:

It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action. *Burns v. Fincke*, 1952, 90 U.S. App.D.C. 381, 197 F.2d 165, 166; 1B Moore, Federal Practice ¶ 0.409[1], p. 1008 (2d ed. 1965). See also *Lawlor v. National Screen Service Corporation*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Smoot v. Fox*, 6 Cir., 1964, 340 F.2d 301; *Cleveland v. Higgins*, 2 Cir., 1945, 148 F.2d 722.

*Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 5 Cir. 1968, 405 F.2d 958, 960; *Weissinger v. United States*, 5 Cir. 1970, 423 F.2d 795. Indeed, under Federal Rule of Civil Procedure 41(b), a judgment of dismissal usually has the effect of an adjudication on the merits even when the court's order fails to state whether it is with or without prejudice.

---

7. Rule 60(b), F.R.C.P. provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, USC, § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Under the Declaratory Judgments Act, 28 U.S.C. § 2201, however, familiar principles of *res judicata* cannot be applied automatically to judgments dismissing suits for declaratory relief without stated reasons. The first section of the Act states:

> In a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. *Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.*

(Emphasis supplied.) This statute, literally read, does not accord every judgment in a declaratory suit the "force and effect of a final judgment," but gives that import only to "[a]ny *such* declaration" (emphasis supplied), that is, any judgment that by its terms states the relations of the parties with respect to the issue in question. It may be that an unadorned dismissal with prejudice should be construed as a declaration that the declaratory plaintiff was not entitled to the statement of rights he sought; however, a contrary conclusion is suggested by the words of the statute and is buttressed by an analysis of the rules of *res judicata*[8] when the dismissal is a consent decree.

The rules of *res judicata*, as the term is sometimes sweepingly used, actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true *res judicata.* It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." *Sea-*

*Land Services, Inc. v. Gaudet*, 1974, 414 U.S. 573, 578–79, 94 S.Ct. 806, 39 L.Ed.2d 9, 17–18. *See also* discussion in Restatement Second of Judgments, p. 1 and § 47 (Tent. Draft No. 1, 1973). When the plaintiff obtains a judgment in his favor, his claim "merges" in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts as a "bar." *Angel v. Bullington*, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. *Cf. Cleckner v. Republic Van and Storage Co.*, 5 Cir. 1977, 556 F.2d 766. *See also* discussion in Restatement Second of Judgments, p. 1 and § 48 (Tent. Draft No. 1, 1973). Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. *Garner v. Giarrusso*, 5 Cir. 1978, 571 F.2d 1330 (1978); *International Assoc. of Machinists & Aerospace Workers v. Nix*, 5 Cir. 1975, 512 F.2d 125, 131; *Blanchard v. St. Paul Fire and Marine Ins. Co.*, 5 Cir. 1965, 341 F.2d 351, 359. *See also* Restatement Second of Judgments, §§ 47(b) and 48 comment a (Tent. Draft No. 1, 1973). The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.

The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims.[9] In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitiga-

---

**8.** At least two state courts interpreting their own declaratory judgment statutes have decided that a dismissal, even "on the merits," is not equivalent to a declaration of rights. *Sachs v. Real Estate Capital Corp.*, 1969, 31 A.D.2d 916, 298 N.Y.S.2d 456; *Cantlin v. State Liquor Authority*, 1965, 23 A.D.2d 930, 259 N.Y.S.2d 310; *Employers Ins. Co. v. Brooks*, 1947, 250 Ala. 36, 33 So.2d 3. While these courts were concerned with the issue on appeal from the de-

claratory action itself, they nonetheless anticipated the problem now facing this court: what *res judicata effect* to give the dismissal.

**9.** *See* discussion in *Hyman v. Regenstein*, 5 Cir. 1958, 258 F.2d 502, *cert. denied*, 1959, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575. *See also* Vestal, Res Judicata/Preclusion, 1969, V–7, et seq.

tion of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. *Harris v. Washington*, 1971, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212. *See also* Restatement of Judgments, § 68 and Restatement Second of Judgments, § 45(c) (Tent. Draft No. 1, 1973). It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication between the parties; the contested issue must have been litigated and necessary to the judgment earlier rendered.[10]

#### a. Claim Preclusion

As this case aptly demonstrates, the rules of claim preclusion are difficult, if not impossible, to apply in the usual form when a declaratory judgment proceeding ends in a judgment that states no more than "dismissed with prejudice." Further, as the Declaratory Judgments Act indicates, claim preclusion may be inappropriate given the purposeful supplementary nature of declaratory relief.

To illustrate these points, we may begin by considering how traditional claim preclusion analysis might be applied to Leco's suit against Kaspar. One way of understanding Kaspar's argument in this case would be to characterize the "claim" in Leco's declaratory suit as a "claim" for a declaration of patent invalidity and non-infringement. This characterization, however, does not comport with our usual understanding of "claim." As expressed in the Restatement Second of Judgments, § 61 (Tent. Draft No. 5, 1978), a "claim" comprises "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." In a suit such as Leco's, the true remedial rights involved are those of the declaratory action *defendant* in his potential suit for damages or injunctive relief against the party taking the role of plaintiff. The declaratory action *plaintiff* has engaged in no transaction giving rise to any substantive rights; his remedial entitlement, if any, emanates from the availability of declaratory relief under the governing procedural statute. He is asserting not a "claim," but an anticipatory defense to a potential claim.

However, if we view the claim presented in a declaratory suit like Leco's as Kaspar's potential claim based on infringement, a startling result—urged at one point below by Leco—might follow from the customary application of claim preclusion to the resulting judgment: because the "successful" defendant's claims would be merged in this "declaration" of patent validity, an infringer could extinguish a patent holder's claim for infringement by suing for declaratory relief and then voluntarily dismissing the suit with prejudice. Undoubtedly no court would sanction such a result, but its theoretical possibility demonstrates the inappropriateness of casting the issue before us within the usual framework of claim preclusion.

---

**10.** The classic statement of the difference between *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) is Judge Learned Hand's, in *Irving National Bank v. Law*, 2 Cir. 1926, 10 F.2d 721, 724:

A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends, not only to all matters pleaded, but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision.

He added, "All this is very old law." Drawing upon this old law, Section 1 of the Restatement of Judgments states both rules and their rationale succinctly:

Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of any parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them.

Some writers have suggested that estoppel or issue preclusion be extended to encompass at least some issues not actually litigated. *See, e. g.*, Vestal, *Res Judicata/Preclusion* V–196 (1969). This would result in narrowing or eliminating the distinction between *res judicata* and estoppel.

■ In addition, the Declaratory Judgments Act itself suggests the inappropriateness of applying rules of claim preclusion in the usual way. The second section of that Act, 28 U.S.C. § 2202, states:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

This language necessarily implies that a declaratory judgment does not embrace that aspect of *res judicata* known as merger: the prevailing party may seek further relief in the form of damages or an injunction. *Powell v. McCormack*, 1969, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491; *Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co.*, 2 Cir. 1958, 255 F.2d 518; *Vermont Structural Slate Co. v. Tatko Bros. Slate Co.*, 2 Cir. 1958, 253 F.2d 29. *See also* Annot., 10 A.L.R.2d 782, 787 (1950); Restatement Second of Judgments, § 76 comment c (Tent. Draft No. 3, 1976).

■ It is true that the "further relief" provisions of Section 2202 do not prevent the application of *res judicata* as a bar. However, that section indicates the supplementary nature of declaratory relief, and recognizes implicitly that an issue presented for declaratory relief may not, in fact, be coextensive with the rights and obligations flowing from the same transaction if presented in the context of a conventional suit. Had the court in Leco's declaratory action adjudicated Kaspar's patent valid, that determination, absent a finding of infringement, would not have been determinative of Kaspar's subsequent suit for damages, even for acts of infringement occurring prior to the dismissal of Leco's suit. *Compare Seaboard Coast Line R.R. v. Gulf Oil Corp.*, 5 Cir. 1969, 409 F.2d 879. Further, had the court declared Leco liable for patent infringement, its declaration would not have been determinative of Kaspar's claim for damages resulting from acts of infringement subsequent to the termination of Leco's suit. In short, unless a declaratory suit necessarily presents all questions of duty and breach that would have arisen in a claim brought by the defendant against the plaintiff in a conventional suit, a determination whether the judgment should have preclusive effect is not necessarily advanced by trying to characterize some set of issues in the declaratory suit as a "claim" or "cause of action" and then applying claim preclusion rules reflexively to that "claim." *See generally* Restatement Second of Judgments, § 76 comment c (Tent. Draft No. 3, 1976).

### b. Issue Preclusion

■ The more reasonable alternative, within the usual framework of *res judicata* principles, is to view the preclusive effect of a prior declaratory proceeding as presenting a special problem of issue preclusion. Although an anticipatory defense, such as Leco's, does not comport with our usual understanding of the term "claim," the *plaintiff* in an anticipatory declaratory proceeding is seeking the adjudication of an issue that would arise in a conventional proceeding brought by the *defendant*. Under the usual rationale of issue preclusion, there is no reason to permit the relitigation of any issue actually litigated and necessary to the judgment rendered in such an anticipatory declaratory action.

■ Because the judgment rendered in Leco's action was a consent decree dismissing the suit, we need not consider to what extent the resolution of a particular issue need be embodied in a declaration of rights for a reviewing court to consider the issue adjudicated for issue preclusion purposes. In the case before us, no issue of law or fact was ever adjudicated. We thus hold that the judgment in Leco's suit has no issue preclusive effect, either directly, with respect to Kaspar's claim for infringement prior to the dismissal of Leco's suit, or collaterally, with respect to Kaspar's claim for damages subsequent to the dismissal of that suit.

■ Judicial finality—the predicate for *res judicata*—arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a

claim before a court of competent jurisdiction.[11] Thus, if the parties to a suit enter into an extrajudicial settlement or compromise, there is no judgment, and future litigation is not barred by *res judicata* or collateral estoppel [12] though, of course, a court may dismiss litigation thereafter filed on the same claim on the basis that the parties have by contract ended their controversy.[13]

Because a compromise is thus potentially less decisive than a judgment, parties already engaged in litigation who wish to settle their differences have attempted to obtain not only greater finality for their compact but judicial sanctions for its enforcement by presenting the settlement agreement negotiated between them to the court and obtaining its embodiment in what is termed a consent decree. The parties thus seek to obtain judicial blessing for their contract.[14]

Such a consent decree, however, is not identical in effect to the conclusion reached by a judge after a trial; thus, an appeal on the merits usually does not lie from it.[15] The parties' proposal does not reflect the consideréd judgment of a judicial officer: it has been forged by them alone as an adjustment of conflicting claims and is not a tempered determination of fact and law after the annealment of an adversary trial. Depending on the temperament and the calendar of the trial judge, the decree may be subject to serious scrutiny, superficial examination, or perfunctory inspection accompanied by a hosanna because another case is off the calendar. Indeed, it appears to be the view of some members of the bar that judicial examination of the terms of a private settlement is intrusive.

█ The rules applicable to the effect of a judicial determination should not be applied automatically to consent judgments. *Fruehauf Trailer Co. v. Gilmore*, 10 Cir. 1948, 167 F.2d 324, 330. *Accord Sealol Corp. v. Flexibox, Ltd.*, D.D.C.1965, 242 F.Supp. 693. *Compare also Russell v. Place*, 1877, 94 U.S. 606, 24 L.Ed. 214 *with United States v. International Bldg. Co.*, 1953, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182, *rehearing denied*, 1953, 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392. This view was reflected by the observation by Mr. Justice Brennan, in *United States v. ITT Continental Baking Co.*, 1975, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148, 162, that the consent decree there involved was to be "construed for enforcement purposes basically as a contract."

Nonetheless, because even a consent decree is a judicial determination, in run of the docket cases it is given the finality accorded under the rules of claim preclusion. This is, in part, for the reason eloquently stated by Professors Moore and Currier:

> [T]he judgment is not an *inter partes* contract; the court is not properly a recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a con-

---

11. While "final judgments" are said to be required for both forms of judicial finality, there is some authority that the requirement is more relaxed for collateral estoppel or issue preclusion. *See, e. g., Restatement Second of Judgments*, § 41 comment g (Tent. Draft No. 1, 1973), and authority cited therein.

12. *Pearson v. Ecological Science Corp.*, 5 Cir. 1975, 522 F.2d 171, 176, *cert. denied*, 1976, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762; *Massachusetts Casualty Ins. Co. v. Forman*, 5 Cir. 1972, 469 F.2d 259, 260, *cert. denied*, 1976, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319.

13. *Thomas v. Louisiana*, 5 Cir. 1976, 534 F.2d 613; *Cia Anon Venezolana De Navegacion v. Harris*, 5 Cir. 1967, 374 F.2d 33.

14. *See* Comment, The Consent Judgment as an Instrument of Compromise and Settlement, 1959, 72 Harv.L.Rev. 1314. *See also* James, Consent Judgments as Collateral Estoppel, 1959, 108 U.Pa.L.Rev. 173; 1B Moore's Federal Practice, ¶ 0.409[5] at 1026. The Restatement of Judgments contains only passing comment on consent decrees or judgments, principally the requirement that a court "scrutinize" a consent judgment in a class action "with regard for the interests of all persons who might have an interest." Restatement of Judgments, § 86 comment h.

15. *Steingruber v. Johnson*, M.D.Tenn.1940, 35 F.Supp. 662, 663; *cf. Kiwi Coders Corp. v. Acro Tool & Die Works*, 7 Cir. 1957, 250 F.2d 562, 563.

sent judgment it has made an adjudication.

1B Moore, *op. cit. supra*, ¶ 0.409[5], p. 1030. Thus, consent decrees have been given *res judicata* effect in many cases; *see*, for example, *Astron Industrial Assoc., Inc. v. Chrysler Motors Corp.*, *supra*, and have been relied upon as a basis for enforcement by contempt sanctions. *See United States ex rel. Shell Oil Co. v. Barco Corp.*, 8 Cir. 1970, 430 F.2d 998.

Different rules, however, apply to consent decrees with respect to issue preclusion because the purpose of a consent decree is typically to avoid the litigation of any issue. In respect to the effect to be given a consent decree for issue preclusive purposes, the Restatement Second of Judgments (Tent. Draft No. 1, 1973) states in a comment:

> In the case of a judgment entered without contest by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such intention.

Restatement Second of Judgments, § 68 comment e (Tent. Draft No. 1, 1973). *See also* Restatement of Judgments, § 68 comments e–i.

Consequently, a consent decree is neither ignored nor treated solely as a contract, although, in considering the finality to be given it, the fact that it originated as a negotiated settlement is considered. Whatever type of repose is sought to be invoked as a result of a judicial consent decree, a court should take into account the fact that it was rendered by consent and determine its impact by the issues actually intended to be precluded by the parties.

The importance of the intention of the parties is stressed by Moore's treatise which expresses the view that, although consent judgments are "res judicata as to the causes of action adjudged," they "should not be given conclusive effect under the doctrine of collateral estoppel" although they "may in some instances, by virtue of the parties' intent, be given conclusive effect as to the issues involved." 1B Moore's Federal Practice ¶ 0.443[3], p. 3909.

While the state courts are divided as to the creation of estoppel with respect to the issues covered in a consent decree, *see* discussion and citations in James, Consent Judgments as Collateral Estoppel, 1959, 108 U.Pa.L.Rev. 173, 174, the federal courts have generally not treated such decrees as preclusive. *See United States v. International Bldg. Co.*, 1953, 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182, denying collateral estoppel effect to a consent judgment for taxes for a previous tax period; *Lawlor v. National Screen Service Corp.*, 1955, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122, denying collateral estoppel effect to a consent judgment "unaccompanied by findings;" *Seaboard Air Line RR v. George F. McCourt Trucking, Inc.*, 5 Cir. 1960, 277 F.2d 593; *Fruehauf Trailer Co. v. Gilmore*, 10 Cir. 1948, 167 F.2d 324. *See also* cases cited in 1B Moore's Federal Practice, ¶ 0.444[3], p. 4010, note 5, and 1B Moore's Federal Practice, ¶ 0.409[5] at 1028, stating that the preclusive effect to be given consent decrees is limited to "res judicata (using this term in a technical sense that does not include collateral estoppel)."

This accords with the view of a number of legal scholars, who treat the question of the extent, if any, of the finality created by a consent decree to be one of the intention of the parties. If they have in their compromise indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated.[16]

The prior decree in Leco's declaratory judgment action was based entirely on the consent of the parties, and involved neither a judicial determination nor a stipu-

---

**16.** James, *op. cit. supra*, note 14; Comment, 1959, The Consent Judgment as an Instrument of Compromise and Settlement, 72 Harv.L.Rev. 1314.

lation of the parties with respect to the validity of Patent 608 or its infringement. We conclude that it does not preclude further examination of those issues. In reaching this conclusion, we adopt the principles of the First and Second Restatement of Judgments and their application to consent judgments. Thus, when determining the effect to be given a decree entered by consent of the parties, consideration is to be given to their intention with respect to the finality to be accorded the decree as reflected by the record and the words of their agreement.

### III. Consent Decrees in Patent Cases

Having concluded that a bare dismissal of a declaratory suit by consent, even "with prejudice," has no claim preclusive effect, and no estoppel effect, either direct or collateral, in a subsequent conventional suit by the defendant against the plaintiff, we have reached our decision that Leco could properly raise its defense of patent invalidity. We would not ordinarily need to confront the difficult issue whether the prior consent decree should have been denied *res judicata* status solely on grounds of public policy concerning the patent laws. However, because of the uncertain status of consent decrees in patent litigation and because by approaching the question through an analysis of that issue we reach the same conclusion, at least with respect to determination of patent validity for the future, we will consider the problems connected with that aspect of this case.

Because of the extensive use of consent decrees in patent cases and the public interest in safeguarding the patent monopoly against abuse, 1B Moore's Federal Practice, ¶ 0.409[5] at 1032, the effect to be accorded consent judgments relating to dismissal of patent cases and patent validity issues raised in them has been the subject of frequent litigation.

More than thirty years ago, the Court of Appeals for the Second Circuit refused to hold that a consent decree dismissing an infringement suit created an estoppel against later litigation with respect to validity of the patent between substantially the same parties. *Addressograph-Multigraph Corp. v. Cooper*, 2 Cir. 1946, 156 F.2d 483. With respect to the effect to be given the earlier decree, it said:

> [E]ither an adjudication of infringement, or a grant of some relief from which infringement may be inferred, is essential before any effect of res judicata can be given to it on the issue of validity. In other words, we think the public interest in a judicial determination of the invalidity of a worthless patent is great enough to warrant the conclusion that a defendant is not estopped by a decree of validity, at least when the decree was by consent, unless it is clear that in the litigation resulting in the decree the issue of validity was genuine.

156 F.2d at 485.

Some years later the *Addressograph-Multigraph* decision was construed by the Second Circuit to mean that the parties may create an estoppel to contest patent validity if, in the consent decree, they expressly stipulate that the patent is valid and has been infringed. *Broadview Chemical Corp. v. Loctite Corp.*, 2 Cir. 1973, 474 F.2d 1391. In that case, and, to some extent in *Addressograph-Multigraph*, the terms *res judicata* and collateral estoppel appear to be used interchangeably. At any rate, both decisions thus support the view taken by Professors Moore and Currier, as well as Professor Fleming James,[17] in giving the decree collateral estoppel effect only to the extent the parties specifically intended.

A related problem came before the Supreme Court in *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 1950, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, where the court held that the licensee of rights under a patent was estopped to attack the validity of the patent. This was, of course, a conventional kind of estoppel, arising from the recognition by the licensee of the licensor's title. But in *Lear, Inc. v. Adkins*, 1969, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, that

---

**17.** James, *op cit. supra*, note 14.

question was re-examined, *Hazeltine* was overruled, and the court held that a patent licensee may assert the invalidity of the patent as a defense to the licensor's contract action for non-payment of royalties. The basis of *Lear* was the "public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. . . . [T]he technical requirements of contract doctrine must give way before the demands of public interest . . . ." *Id.*, 395 U.S. at 670, 89 S.Ct. at 1911, 23 L.Ed.2d at 623. The court further said: "[F]ederal law requires, that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." *Lear, supra*, 395 U.S. at 668, 89 S.Ct. at 1910, 23 L.Ed.2d at 621. *See also Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 1971, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788.

With both *Addressograph-Multigraph* and *Lear* cited to it, the Seventh Circuit in *Business Forms Finishing Service, Inc. v. Carson*, 7 Cir. 1971, 452 F.2d 70, considered the collateral estoppel effect to be given a prior consent decree. The defendant in that case had unambiguously agreed to recognize the validity of the plaintiff's patent after three days of actual trial. But, based on the public policy set forth in *Lear* and other Supreme Court decisions,[18] the court, in an opinion by then Circuit Judge Stevens, refused to accord finality to the order, although it observed, "[I]t is quite clear that questions of business ethics must be put to one side", and the "defendants are in the unattractive position of seeking to repudiate their solemn undertaking while the ink is barely dry," 452 F.2d at 73. The Seventh Circuit has continued to adhere to this view. *Kraly v. National Distillers and Chemical Corp.*, 7 Cir. 1974, 502 F.2d 1366; *Crane Co. v. Aeroquip Corp.*, 7 Cir. 1974, 504 F.2d 1086.

Notwithstanding *Lear*, the Second Circuit has continued to apply the *Addressograph-Multigraph* rule and give collateral estoppel effect to a consent decree that specifies both patent validity and infringement. *Broadview Chemical Corp. v. Loctite Corp., supra; Wallace Clark & Co., Inc. v. Acheson Industries, Inc.*, 2 Cir. 1976, 532 F.2d 846. *See also Warner-Jenkinson Co. v. Allied Chemical Corp.*, 2 Cir. 1977, 567 F.2d 184, 188. A consent decree was enforced by the Eighth Circuit in *United States ex rel. Shell Oil Co. v. Barco Corp.*, 8 Cir. 1970, 430 F.2d 998, in which contempt proceedings were brought for violation of the decree, but the court there considered the issue to be one of contempt of the court's authority and said that *Lear* was "inapposite and not controlling." In a copyright case, the Ninth Circuit has said, "We expressly save the question. whether [an earlier line of cases permitting collateral estoppel to be invoked] survived" *Lear*. *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 9 Cir. 1971, 446 F.2d 738, 739–740.[19]

We considered the question in *Brose v. Sears, Roebuck & Co.*, 5 Cir. 1972, 455 F.2d 763. There the parties reached a consent decree with respect to patent validity and agreed to dismiss a suit without prejudice. The trial judge himself struck out the words "without prejudice" and substituted in his own hand "with prejudice." In an opinion by Chief Judge Brown, we refused to give the judgment automatic finality:

> The 'with prejudice' simply had the effect of preventing either party from ever asserting against the other the same claims or counterclaims.

> At most, the pleadings and judgment in the 1967 Illinois proceedings amounted only to an admission in the sense of action by Sears and Eagan inconsistent

---

**18.** *Blonder-Tongue v. University of Illinois Foundation*, 1971, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788; *Sears, Roebuck & Co. v. Stiffel Co.*, 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; and, *Compco Corp. v. Day-Brite Lighting, Inc.*, 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669.

**19.** *See* discussion in Kananen, Comments and Observations on Res Judicata and Patent Law, 1966, 18 West.Reserve L.Rev. 103; Comment, "To Bind or not to Bind": Bar and Merger Treatment of Consent Decrees in Patent Infringement Litigation, 1974, 74 Colum.L.Rev. 1322.

with the current assertion. But it is only evidence, not conclusive, and the trier of the facts was entitled to disregard it as insignificant for a number of reasons, not the least of which was the plain language that all issues were compromised.

455 F.2d at 767–768.

█ Thus, this court is committed at least to the *Addressograph-Multigraph* principle: a consent decree is not issue preclusive, i. e., does not act as collateral estoppel, in the absence of clear evidence concerning the parties' intention, including specific reference to the issues that it was intended to preclude.

In this case, the recital made on the record in the first suit furnishes positive evidence that the parties did not agree that their compromise would preclude further litigation of patent validity. Public policy, explicated in *Lear*, commands us not to accord monopolies by contract. If the parties to the contract did not agree to create a monopoly *a fortiori*, the court should not go beyond their agreement. We are thus again led to the conclusion that the prior consent decree dismissing Leco's suit would not estop Leco from attacking the validity of Patent 608 in its defense to Kaspar's claim for damages covering the period following dismissal of the declaratory action.

█ The application of patent policy to other aspects of this suit is more problematic. Kaspar has raised a claim for damages covering the period prior to dismissal of the declaratory action. While a consent decree might conceivably be denied claim preclusive effect on public policy grounds,[20] the public policy declared in *Lear, supra*, precluding patent monopoly by private settlement, would not prevent a party from agreeing to pay damages for past infringement acts so long as that party remains free to protect its interests, and, incidental-ly, the public weal, by asserting the invalidity of the patent as to future acts, as we have allowed Leco to do in this action. Approached first from considerations of patent policy, resolution of the question whether Leco could challenge the validity of Patent 608 with respect to Kaspar's earlier claim would still turn on whether dismissal of the earlier suit "with prejudice" alone sufficiently manifested the parties' intent to declare Patent 608 valid, giving that finding at least direct estoppel effect in a suit by Kaspar against Leco on the same claim.

In sum, patent policy, in addition to those principles of *res judicata* discussed above, leaves Leco free to challenge patent validity as it relates to events *subsequent* to the dismissal of the declaratory suit. Through our analysis of consent decrees in declaratory proceedings, we have concluded that the judgment dismissing Leco's action should be given no direct estoppel effect with respect to Kaspar's claim for damages *prior* to the dismissal of that action. We reserve the question whether the sole effect of the dismissal is, as Leco asserts, to bar it from instituting another declaratory proceeding against Kaspar on patent validity (or, indeed, whether it has even that effect). It follows that we must reserve the question whether such preclusive effect would be different in the context of patent litigation, as compared to consent dismissals of declaratory actions unrelated to patent issues.

## IV. The Answer is Now Obvious

We turn finally to the issue of patent validity. Patent 608 is attacked on the basis that the latching device was obvious, hence not properly the subject of a patent. While the ultimate question of patent validity is one of law, . . . the

---

**20.** Summarizing the jurisprudence, Moore and Currier state:

The consent judgment, whether at law or in equity, has . . . *res judicata* [both claim and issue preclusive] effect. This general proposition is qualified . . . by some overriding principle, such as: the public in-terest in obtaining a judicial determination of the invalidity of a worthless patent, unless it is clear that in the litigation resulting in the consent decree the issue of validity is genuine . . . .

*Id.* at p. 1032.

§ 103 condition [that a patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having skill in the art] . . . lends itself to several basic factual inquiries. . . .

*Graham v. John Deere Co. of Kansas City,* 1966, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, 556.

The court outlined the procedure for making those factual inquiries:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. . . .

383 U.S. at 17–18, 86 S.Ct. 694, 15 L.Ed.2d 556.

A trial court's fact findings upon which it bases its legal conclusion of obviousness or non-obviousness are binding upon an appellate court unless they are clearly erroneous. *Hughes Tool Co. v. Varel Mfg. Co.,* 5 Cir. 1964, 336 F.2d 61. "Indeed, because patent cases so frequently involve conflicts in the evidence, especially in expert testimony, they seem particularly suited for the review limitations imposed by Rule 52(a)." *Bird Provision Co. v. Owens Country Sausage, Inc.,* 5 Cir. 1978, 568 F.2d 369, 372. If the findings of fact are not clearly erroneous, the only issue on appeal is whether the legal conclusion drawn from those facts is correct.

It is asserted, however, that the district court's findings should not be affirmed because the trial judge adopted verbatim the proposals submitted by *Leco.* We have frequently criticized this practice for the court's findings should represent its own judgment, not a mirror of counsel's efforts. *Florida Bd. of Trustees of Internal Improvement Trust Fund v. Charley Toppino and Sons, Inc.,* 5 Cir. 1975, 514 F.2d 700, 703; *Williamson-Dickie Mfg. Co. v. Hortex, Inc.,* 5 Cir. 1974, 504 F.2d 983, 985. However, the mere fact that the court penned its name to a manuscript authored by an advocate does not of itself indict them. *United States v. El Paso Natural Gas Co.,* 1964, 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12, 17; *Florida Bd. of Trustees of Internal Improvement Trust Fund v. Charley Toppino and Sons, Inc.,* 5 Cir. 1975, 514 F.2d 700, 703.

In this case, the comments the court made on the records show that the trial judge understood the case and performed his decision reaching process adequately. *Lorenz v. General Steel Products Co.,* 5 Cir. 1964, 337 F.2d 726.

Because the trial court's findings of fact are adequately supported by the record, and are not clearly in error, we review them no further. In addition, we find the legal conclusion of obviousness drawn from those facts to be correct.

For the foregoing reasons, the judgment of the district court is, in all respects, AFFIRMED.