**STATE OF FLORIDA BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND, Plaintiff-Appellant,**

**v.**

**CHARLEY TOPPINO AND SONS, INC., Defendant-Appellee.**

**No. 74–1352.**

United States Court of Appeals, Fifth Circuit.

June 11, 1975.

Rehearing Denied July 30, 1975.

Kenneth G. Oertel, Gen. Coun., Florida Bd. of Trustees of the Int. Imp. Trust Fund, Tallahassee, Fla., for plaintiff-appellant.

Joseph C. Jacobs, Robert J. Angerer, Tallahassee, Fla., for defendant-appellee.

Before GEWIN, BELL and CLARK, Circuit Judges.

BELL, Circuit Judge:

Appellant Board of Trustees filed suit in district court against Charley Toppino and Sons, Inc., alleging wrongful excavation by Toppino of appellant's land lying beneath the navigable waters of the Bay

of Florida. The excavation having taken place four years earlier, appellant sought a mandatory injunction to require restoration of the excavated land to its original state. Alternatively, appellant sought to recover damages for conversion of fill material and for injury to its natural resources. The district court denied all relief sought, and this appeal followed. We affirm.

The central assignment of error goes to the district court's finding that appellant had failed to prove ownership of the lands in question. Error is also asserted as to the trial court's adoption of the findings of fact and conclusions of law as prepared by counsel for Toppino, and as to the court's judicial notice of and reliance upon its order in the related case of United States v. Charley Toppino and Sons, Inc.[1] These assignments of error will be discussed seriatim.[2]

■ The origin of this dispute was Toppino's purchase in 1965 of two parcels of submerged lands in the Bay of Florida held in trust by appellant. That same year Toppino obtained permission from the United States Army Corps of Engineers to dredge a channel in the vicinity of the purchased lands. Toppino planned to develop a small harbor in the area to serve uplands which it owned, and began to excavate the two yacht turning basins in dispute.[3] No permit was ever obtained for the excavation of these basins.[4] Some portions of the material excavated therefrom were used as fill for land in the development, while other portions were sold. In 1969, Toppino ceased its excavation operations upon expiration of its permit to dredge the channel and on order of the Corps of Engineers.

■ The determination of the first issue, ownership, depends upon whether the excavation of the yacht turning basins took place on the property of appellant.[5] This, in turn, depends upon the establishment of a boundary line. Flori-

1. No. 73–380–CIV–WM, S.D.Fla., decided August 10, 1973. Two months prior to appellant's filing this action, the United States brought suit against Toppino to require the restoration of submerged lands which had been excavated without the requisite permit from the Army Corps of Engineers. Appellant sought to intervene in the United States' suit, but was unsuccessful. After the present action was filed, appellant moved to have the two suits consolidated, or to stay the United States' suit pending appellant's intervention therein. A consent judgment between the United States and Toppino effectively rendered these motions moot, and they were denied on August 21, 1973. Subsequently, appellant petitioned this court for a writ of mandamus to compel the district court to dissolve the consent judgment in the United States' action, or to compel the district court to consolidate the two actions. This petition was denied on August 31, 1973 (No. 73–3032).

2. Our view of the case renders it unnecessary to consider appellant's other assignments of error.

3. For the sake of consistency with the district court's findings, we will refer to the excavated area as "turning basins" rather than as "borrow pits," the name used by appellant. Appellant's theory of the case is that Toppino was excavating this land not for the purpose of harbor development, but for the purpose of mining fill material for resale. This characterization is supported by the fact that each basin was approximately sixty feet deep, while the only channel leading to the basins (also dredged by Toppino) was eight feet deep.

4. Toppino's failure to obtain a permit for excavation of the turning basins provides the jurisdictional basis for this action under the federal Rivers and Harbors Act of 1899 (33 U.S.C.A. § 401 et seq.). See Tatum v. Blackstock, 5 Cir., 1963, 319 F.2d 397, 399–400; Neches Canal Co. v. Miller & Vidor Lumber Co., 5 Cir., 1928, 24 F.2d 763, 765. Cf. Intracoastal Transportation Inc. v. Decatur County, Georgia, 5 Cir., 1973, 482 F.2d 361, 366 n. 14.

On title to submerged lands as between the federal and state governments, see generally United States v. Maine, 1975, —— U.S. ——, 95 S.Ct. 1155, 43 L.Ed.2d 363; United States v. Florida, 1975, —— U.S. ——, 95 S.Ct. 1162, 43 L.Ed.2d 375.

5. Toppino owned uplands in the vicinity of the excavations as well as submerged land which it had purchased from appellant in the 1965 transaction and in a separate 1967 transaction. Since this dispute arose, the exact boundaries of ownership as to these lands has been resolved by a quitclaim deed from Toppino to appellant transferred pursuant to the consent judgment rendered in United States v. Charley Toppino and Sons, Inc. See note 1 supra.

da law [6] places the burden of proof upon the one claiming the existence of a boundary line to establish its exact location. *See* Craig v. Russell, 141 Fla. 105, 192 So. 457, 458 (1939); Gibson v. Wright, 179 So.2d 245, 248 (Fla.Dist.Ct. App.1965); Leighton v. Johns, 116 So.2d 436 (Fla.Dist.Ct.App.1959). *Cf.* Shaw v. Williams, 50 So.2d 125, 126 (Fla.1951) (en banc). A claimant does not carry his burden, moreover, when his proof consists of inaccurate or inconclusive exhibits and testimony. *See* Craig v. Russell, *supra*; Leighton v. Johns, *supra.*

To carry its burden of proof, appellant asserted that a transparency of a 1965 plat of the land deeded to Toppino, and a transparency of another survey of the land commissioned by Toppino, when placed over a Navy photograph of the same land, established that Toppino had been excavating land owned by appellant in trust for the State of Florida. The key to appellant's claim to the excavated land was in establishing the mean high water line around Florida Bay, which line separates land owned by the sovereign from privately-owned uplands. In this regard the transparencies indicated that the turning basins were outside the submerged lands purchased from appellant by Toppino.

The two surveyors from whose sketches the transparencies had been made testified that the location of the mean high water line was at best approximate, and one testified that it could vary by as much as 600 feet. A second transparency exhibit, fashioned by one of these surveyors from a government survey, showed the mean high water line as bisecting the two basins. A fair inference from this exhibit, together with the description of the submerged lands purchased by Toppino, could have placed the basins on Toppino property. In sum, without conclusively locating the mean high water line, there was no point of beginning to work from in establishing the boundary line.

■ From all the evidence presented, the district court found that portions of the excavated area appeared to be within appellant's land, but that appellant had failed to prove the extent of its ownership of the lands in question. The court concluded, in effect, that there was no accurate and conclusive proof as to the extent of Toppino's trespass, if any, from the standpoint of either the excavation or the fill removed, which reached the level required by Florida law to establish the existence of a boundary line. We find no error in this conclusion.

■ Neither do we find merit in the contention that the district court erred in adopting the findings of fact, conclusions of law, and final judgment as prepared by counsel for Toppino pursuant to the court's request. At the conclusion of the trial, the court requested that both parties submit proposed findings and conclusions. It then chose to adopt the findings as drawn by Toppino's counsel. While such practice offers potential for abuse, it is not reversible error.[7] The "clearly erroneous" test of Rule 52(a), F.R.Civ.P., applies whether the court drafts its own findings of fact, or adopts findings of fact as submitted by a party.

---

6. Appellant's case is based on federal question jurisdiction, *see* note 3 *supra*, and does not involve diversity of citizenship. It is well settled that property disputes arising in non-diversity cases, being essentially local in nature, are capable of resolution according to state law "in the absence of a contravening federal statute or policy." United States v. Williams, 5 Cir., 1971, 441 F.2d 637, 643. *See also* United States v. Standard Oil Co., 1946, 332 U.S. 301, 308–09, 67 S.Ct. 1604, 91 L.Ed. 2067, 2072; United States v. 1,078.27 Acres of Land, 5 Cir., 1971, 446 F.2d 1030, 1040. In the present case, questions are raised as to burden and failure of proof within a property dispute context. Finding no contravening federal law or policy, we will decide these matters according to the laws of Florida.

7. The problems which inhere in this practice, as well as the need for care and caution on the part of district courts, are pointed out in Keystone Plastics, Inc. v. C & P Plastics, Inc., *supra,* at 962. We may add to the points mentioned therein that the integrity of the judicial process demands (1) close scrutiny by the district court for accuracy from the standpoint of fact and law, plus (2) that degree of clarity which is necessary for a review of what is essentially the work of counsel.

**704**

*See* United States v. El Paso Natural Gas Co., 1964, 376 U.S. 651, 657, 84 S.Ct. 1044, 12 L.Ed.2d 12, 17; Keystone Plastics, Inc. v. C & P Plastics, Inc., 5 Cir., 1975, 506 F.2d 960, 962–63.

As to the claim that the district court took judicial notice of the order in United States v. Charley Toppino and Sons, Inc., *see* note 1 *supra,* and relied thereon in rendering its decision in the present case, we find no such reliance. It is not error, furthermore, for a court to take judicial notice of related proceedings and records in cases before that court. *See, e. g.,* National Fire Insurance Co. v. Thompson, 1930, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881, 885; ·Aloe Creme Laboratories, Inc. v. Francine Co., 5 Cir., 1970, 425 F.2d 1295, 1296.

Affirmed.