**In re Clayton Welton NORMAN, Debtor.**

**Earl GILLIAN, Jr., Trustee, Plaintiff,**

v.

**Clayton Welton NORMAN, Defendant.**

**Adv. No. 83–0327.**

United States Bankruptcy Court, M.D. Alabama.

March 29, 1984.

E. Terry Brown, Montgomery, Ala., for plaintiff.

Alfred Q. Booth, Prattville, Ala., for defendant.

## OPINION ON COMPLAINT OBJECTING TO DISCHARGE

RODNEY R. STEELE, Bankruptcy Judge.

On July 29, 1983, the trustee filed a complaint objecting to the discharge of this debtor under Title 11, United States Code, Section 727. Specifically, he objects on the grounds that the debtor with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property did transfer, remove, destroy, mutilate or conceal, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the debtor within one year before the date of the filing of the petition or property of the estate after the date of the filing of the petition. See Section 727(a)(2).

The trustee also asserts violations of Section 727(a)(3), (a)(4), and (a)(6)(A). These subsections refer to destruction, mutilation or falsification of books, documents, records and papers from which the financial condition of the debtor can be ascertained, and under (a)(4), that the debtor made a false oath or account in connection with the filing of his bankruptcy petition, and that the debtor has refused to obey a lawful order of the court, in this case, to appear for the purpose of giving testimony or evidence.

The debtor in this case failed to appear on several occasions when this complaint objecting to discharge was called for hearing, and the court did continue it from time to time in an effort to give Mr. C.W. Norman an opportunity to obtain counsel.

The matter was finally called for hearing on February 6, 1984, at 2 p.m., at Montgomery. Mr. Norman had retained the services of Mr. Al Booth, an attorney, to represent him at that time. Mr. Booth had previously withdrawn from representation of Mr. Norman, but now appeared on his behalf at the hearing.

Testimony was taken from Mr. John Owens, from Mr. Calvin Headley, from Ms. Bonnie Harper, from Mr. Steven Horton, and from C.W. Norman.

Based upon the testimony given at that time, and upon the documents introduced into evidence at that time, and upon further testimony given by C.W. Norman in a related proceeding in this court, which will be referred to later, the court reaches the following findings and conclusions.

## FINDINGS AND CONCLUSIONS

The bulk of the testimony in this case, and the thrust of the trustee's objection to discharge, revolves around Section 727(a)(2) of the Bankruptcy Code of 1978 (Title 11, U.S.C.), and it is alleged in the complaint that the debtor transferred a piece of real property at 208 Tew Court, Prattville, Alabama, to his mother and father within one year before the date of the filing of the petition with the intent to hinder, delay or defraud his creditors, and further that he removed or recovered from various persons, after the filing of the bankruptcy petition, and used for his own purposes, certain property consisting of rental payments and mortgage payments which was property of the estate with the intent to hinder, delay or defraud the trustee in this case.

The other allegations under Section 727(a)(4) relate to the making of false or inaccurate statement in his bankruptcy schedules. We cannot conclude from the

dearth of evidence, that he intentionally made any false oath or account. It appears that his attorney did most of the work in preparation, and that such preparation was not complete, and was hurriedly done.

Nor can we say that the debtor concealed, destroyed, mutilated, falsified or failed to keep books and ·records from which his financial condition could be ascertained. It appears that he kept very few business records, and in any event, there is very little evidence concerning this matter upon this submission.

As to the charge under Section 727(a)(6)(A), that the debtor willfully failed to obey an order of this court to appear and give testimony or other evidence to the trustee and other creditors, there is some evidence that he refused or failed to appear in response to that order, but we are unable to say that he wilfully and intentionally refused to obey that order.

We are left with the allegations under Section 727(a)(2).

And we conclude that the trustee has proved his case in connection with the transferral or concealment of the property of this estate after the date of the filing of the petition.

The testimony in this case on February 6, 1984, clearly showed that Mr. Norman, after the conversion of his bankruptcy case from Chapter 11 to Chapter 7 on November 29, 1982, continued to collect rent from Jasper's Lounge in the amount of $1,000, and from the Zip Lounge in the amount of $1,000. He collected these rental payments in December of 1982, and in January of 1983. Moreover, the evidence is clear that he continued to collect in December of 1982, $350 as rent from the Cloverland Service Center.

And in December of 1982, he collected $250 from Bonnie Harper on the Grove Restaurant, and on a farm house which was rented to her in Autauga County.

He moreover collected mortgage payments from Mr. Horton on a home sold to Mr. Horton, in the amount of $200 per month. These mortgage payments were collected by Norman in December of 1982, and in January of 1983. All of these collections were made after the conversion of this bankruptcy to Chapter 7.

The one difficulty presented in this case was some proof of the intent to hinder, delay or defraud the trustee in this case.

The only outstanding evidence at the time of the hearing in this case concerning intent was a strong, uncooperative attitude on the part of C.W. Norman towards his trustee. He neglected to appear at hearings in which his trustee sought to recover property. He neglected or refused to respond to pleadings filed by his trustee. He has failed throughout the proceedings to assist his trustee in the collection and liquidation of his estate.

This attitude is mitigated to some extent, by the generally known fact that C.W. Norman has suffered a stroke, or strokes, which has impaired to some extent his mental capacities.

His appearance in court, however, on two occasions, for hearings at which his testimony was required, one involving the trustee's attempt to recover certain property from C.W. Norman's parents, and the other at the time of this hearing on trustee's objection to discharge, indicate to the court that Mr. Norman is competent, and that he is capable and has been capable of understanding and handling his affairs and his property.

The element which finally points to the intent to hinder, delay or defraud the trustee in the administration of this estate is evidence obtained at the time of the hearing on the complaint by the trustee to recover certain property from C.W. Norman's parents. See Adversary Proceeding No. 83–0198.

During the hearing on that complaint, C.W. Norman's testimony was interrupted from time to time by the testimony of his aunt, Mrs. Carolyn Hovis, of Scottsboro, Alabama. At one point, in testimony concerning the disposition of a 1982 Chevrolet Caprice sedan, the debtor testified without

contradiction that he had taken this automobile, which was his property, and which had been in the possession of his wife, Linda, and had sold the vehicle to Larry Puckett Chevrolet of Prattville, Alabama, for $6,000. Mrs. Hovis volunteered during the course of this testimony from the courtroom that she had told C.W. Norman and his father, C.G. Norman, and the Puckett dealership when they went to the dealership to dispose of the car, that they could not sell it, because the car was "in court." She stopped the sale on that occasion, but debtor later sold the car to that dealership.

We consider this testimony by Mrs. Hovis, who had been sworn and had given testimony in that same proceeding, to be sufficient evidence of this debtor's intent to hinder, delay or defraud the trustee. With knowledge that the automobile belonged to the estate in bankruptcy, he and his father intentionally took the car to a dealer and sold it. The $6,000 was delivered to C.W. Norman, and has apparently been spent by C.W. Norman himself.

He was, then, from the testimony of Mrs. Hovis, advised that the vehicle did not belong to him, but belonged to the court, and he sold the vehicle anyway.

█ We think this evidence, together with his uncooperative attitude, and together with the unexplained disappearance of considerable property in this estate, constitutes sufficient evidence of his intent to warrant denial of the discharge in this case.

Debtor's sale of the 1982 Caprice occurred in July or August of 1983, according to his own testimony, and he sold it to Puckett Chevrolet for $6,000.

█ We do not think there is any impediment under Rule 201 of the Federal Rules of Evidence to considering this testimony in the adversary proceeding against C.G. Norman and Evelyn Norman, the parents of this debtor. The same petitioner was involved in both cases, and the testimony was that of C.W. Norman himself and of his aunt, Carolyn Hovis. Under such circumstances, we think the court may easily take judicial notice of the evidence given by Mrs. Hovis at that time. It may certainly take judicial notice of those matters and things which occurred in a case before the court, and pending for determination at the time, and which is a part of the records and evidence in this court concerning this debtor. See *State of Florida, Board of Trustees of the Internal Improvement Trust Fund, Plaintiff, v. Charley Toppino and Sons, Inc.,* (5th Cir.1975) 514 F.2d 700 at 704.

And the debtor/defendant in this adversary proceeding, has full protection under Rule 201(e) if he seeks further testimony or evidence to be adduced concerning his knowledge or intent.

The conclusion finally is that this uncooperative debtor has transferred or concealed from the trustee in this case, rent payments and mortgage payments of substantial worth, and has further concealed or transferred a vehicle worth $6,000, the property of this estate, after November 29, 1982, and when this trustee was entitled to that property, and that the debtor transferred or concealed that property with intent to hinder or delay the trustee in the administration of the estate.

An appropriate order will enter.