In re ALABAMA LAND AND
MINERAL CORP.,
Debtor.

In re Mid–South Resources
Corp., Debtor.

Nos. 98–03603–TOM–7,
98–03604–TOM–7.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Dec. 11, 2000.

Kimberly B. Glass, for trustee.

David B. Anderson, for Bank.

## MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Chief Judge.

■ This matter comes before the Court on a Motion for Summary Judgment filed by National City Bank of Kentucky (f/k/a National City Bank, Kentucky) (hereinafter "Bank") on October 12, 2000. The Chapter 7 Trustee (hereinafter "Trustee") filed a Cross–Motion for Summary Judgment on October 25, 2000. Both motions seek summary judgment on the Bank's Motion for Relief from Stay filed on September 1, 2000. On October 30, 2000, Kimberly Glass, attorney for the Trustee and David Anderson, attorney for the Bank, appeared at the final hearing on the respective motions for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994)[1] and the district court's General Order of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(G).[3] This Court must decide whether to grant summary judgment to the Bank, the Trustee or neither party on the bank's relief from stay motion. This Court has considered the pleadings, briefs and attached exhibits, arguments of counsel and the law. Accordingly, this Court finds and concludes as follows.[4]

## I. FINDINGS OF FACT[5]

On or about December 27, 1995, the Bank issued an Irrevocable Standby Letter of Credit in the amount of $1,000,000 for the account of Alabama Land and Minerals Corporation (hereinafter "Alabama Land") in favor of Van American Insurance Company, one of Alabama Land's bonding companies (hereinafter "Van American").[6] Subsequently, Alabama

1. 28 U.S.C. § 1334(b) provides:
   Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
   28 U.S.C. § 151 provides:
   In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or by order of the district court.
   28 U.S.C. § 157(a) provides:
   Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

2. The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides: The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

3. 28 U.S.C. § 157(b)(2)(G) provides:
   (b)(2) Core proceedings include, but are not limited to—
   (G) motions to terminate, annul, or modify the automatic stay[.]

4. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

5. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir.1975).

6. Most of the facts are taken from the Parties' Stipulated Statement of Facts and the exhibits attached thereto. (Alabama Land B.K. Proceeding No. 605) (Mid–South B.K. Proceeding No. 430). Any additional facts are noted with their source.

Land entered into a Reimbursement and Security Agreement whereby Alabama Land agreed to reimburse the Bank for any draws on the Letter of Credit and further pay a $2,500 drawing fee, interest at Prime plus four percent and any costs of collection. Also on or about December 27, 1995, Alabama Land and Mid–South Resources Corporation (hereinafter "Mid–South") signed as joint applicants an Escrow Account Agreement pursuant to which Mid–South deposited $1,000,000 with the Bank. (Foshee Aff., Exhibit C). This Agreement provided that Alabama Land and Mid–South could request that the monies invested in the Letter of Credit Account be invested in one or more certificates of deposit issued by the Bank. (Foshee Aff., Ex. C ¶ 3). Thereafter, the Debtors apparently did request that the money be invested in a certificate of deposit because the Bank invested the $1,000,000 in a certificate of deposit (hereinafter the "CD") denominated on the Bank's books as CD # 50313123.

On June 1, 1998, both Alabama Land and Mid–South filed voluntary chapter 11 petitions. On April 7, 2000, both cases were converted to chapter 7. (Alabama Land B.K. Proceeding No. 451) (Mid–South B.K. Proceeding No. 307). So long as no default existed on the Letter of Credit, Mid–South periodically received interest income from the CD. On or about July 19, 2000, the Bank honored the direction of the Trustee and changed the CD renewal terms from a maturity term of seven days to a term of ninety days.

On August 11, 2000, Van American presented a $1,000,000 sight draft on the Letter of Credit. On August 15, 2000, the Bank requested that the Trustee provide the Bank the $1,000,000 draw plus the $2,500 drawing fee. The Trustee did not provide these funds. On August 21, 2000, the Bank paid $1,000,000 to Van American in accordance with the Letter of Credit.

Due to the accrual of interest under the Reimbursement Agreement at a rate in excess of the interest earned on the CD, the amount owed to the Bank under the Agreement now exceeds the principal amount of the CD plus accrued interest. On or about October 16, 2000, the Bank honored the direction of the Trustee upon the maturity of the CD and reinvested the proceeds of the CD for a term of ninety days in a CD of the Bank. The Trustee has received and continues to receive Confirmation and Advice Statements characterizing the funds as a CD with information about the interest rate and maturity date of the CD. (Joint Stipulation ¶ 8 and Ex. D).

It is undisputed that no written certificate was issued evidencing the CD. (Foshee Aff. ¶ 6).

## II. CONCLUSIONS OF LAW

The Trustee asserts that the Bank is not secured as to the funds because the Bank failed to perfect its security interest. The Bank asserts that it has perfected its interest in the funds because the CD is an instrument and the Bank has possession. In the alternative, the Bank claims the funds are a general account not covered by Article 9 and the Bank has a right of setoff and common law pledge. Also in the alternative, the Bank claims the funds are in a "special" account that is not an asset of the Debtors' estates. This Court must first determine the standard for summary judgment and whether summary judgment is appropriate in this case. If summary judgment is appropriate, then this Court must determine the proper characterization of the funds, the proper method of perfecting the Bank's security interest, if applicable, and the fate of the deposited funds.

### A. Summary Judgment Standard

Summary judgment is appropriate only if no genuine issue as to any material fact exists and if the movant is entitled to a judgment as a matter of law. FED.

R.Bankr.P. 7056.[7] The party moving for summary judgment has the burden of demonstrating that these conditions have been met. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 324, 106 S.Ct. 2548.

The facts relied on by the movant must be viewed in the light most favorable to the nonmoving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is not to decide issues of material fact, but rather must decide whether such issues exist while avoiding weighing conflicting evidence or making credibility determinations. *See id.; see also Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. When a motion for summary judgment is made and supported as provided in the rules, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Bankr.P. 7056(e). If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R.Bankr.P. 7056(e).

In the instant proceeding, the parties have stipulated to the material facts. These facts are sufficient to permit this Court to rule on the cross-motions for summary judgment and the motion for relief from stay as a matter of law.

### B. Characterization of the Funds

█ The Bank contends that the funds are not being held as a CD and further that the funds are being held as a time deposit on the books of the Bank. (Foshee Aff. ¶ 6). However, this Motion is the first time the Bank has attempted to characterize this transaction or the holding, retention or deposit of funds as anything other than a CD. For this and the following reasons, this Court holds that the funds are held in a CD by the Bank.

The Bank had all the control in this situation. The Bank represented to the Debtors that the funds were being held in a CD. The documents prepared by the Bank concerning the funds called the account a CD. The Bank's Confirmation and Advice Statements periodically sent to the Debtors and later to the Trustee described the funds as a CD. (Joint Stipulation Ex. D). The Statements contained an issuance date, a maturity date and an interest rate of 6.25%. *Id.* Neither the Debtor nor any other creditor or party in interest had notice that a certificate was not actually issued. Further, the Bank could have issued and retained a certificate in order to perfect its security interest in the CD.

This was not a transaction involving legally unsophisticated entities. All references in the Bank's documents were to a CD and the Bank must be held to the consequences of using legally defined terms. The Bank must also be deemed to have knowledge of what is required to perfect the interest created by those terms. The Bank could have amended the

---

7. This rule incorporates without modification Rule 56 of the Federal Rules of Civil Proce- dure into the Bankruptcy Rules governing adversary proceedings.

82

documents and provided that the funds were held only in a deposit account, but there is nothing to indicate that the Bank did so. The Bank is bound by its own documents and representations.

Because this Court has determined that the funds are held in a CD, it is unnecessary to discuss set-off, pledge or special accounts.

## C. Perfection of the Security Interest[8]

■ Having determined that the funds are held in a CD, the Court now turns its inquiry to the proper method of perfecting a security interest in a CD. K.R.S. § 355.3–104(10)[9] defines a certificate of deposit as an instrument which is subject to Article Nine of the Commercial Code of Kentucky pursuant to K.R.S. § 355.9–102(1)(a).[10] Kentucky law provides that a security interest in an instrument (the CD) may only be perfected through possession of the instrument by the secured party. KY.REV.STAT.ANN. § 355.9–304(1) (Banks–Baldwin 1993)[11]. *See also FDIC v. Cardinal Resources, Inc., et al.,* 724 F.Supp. 466, 467 (E.D.Ky. 1989), *aff'd,* 888 F.2d 127 (6th Cir.1989). The Bank admits that no certificate was

issued on this CD. (Foshee Aff. ¶ 6). Thus, the Bank does not have possession of the instrument and has not properly perfected its security interest in the CD. The Bank is therefore unsecured.

## III. CONCLUSION

The Bank created all the documents necessary to conclude this transaction and all correspondence from the bank indicated that the funds were being held in a CD. The Bank can not be permitted to now recharacterize this transaction because it failed to perfect its security interest. Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that the Bank's Motion for Summary Judgment is DENIED. It is further ORDERED, ADJUDGED AND DECREED that the Trustee's Cross–Motion for Summary Judgment is GRANTED. The Bank's Motion for Relief from Stay is therefore DENIED. The funds in the CD shall be remitted to the Trustee and distributed according to the provisions of the Bankruptcy Code.

**8.** Perfection of the Bank's interest in the CD is governed by Kentucky law pursuant to K.R.S. § 355.9–103. KY.REV.STAT.ANN. § 355.9–103(1) provides:
(a) This subsection applies to documents and instruments . . .
(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.
There is nothing to indicate that the funds were ever held anywhere other than Kentucky.

**9.** KY.REV.STAT.ANN. § 355.3–104(10) provides:
(10) "Certificate of deposit" means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

**10.** KY.REV.STAT.ANN. § 355.3–102(1)(a) provides:
(1) Except as otherwise provided in KRS 355.9–104 on excluded transactions, this article applies:
(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts[.]

**11.** KY.REV.STAT.ANN. § 355.9–304(1) provides:
(1) A security instrument in chattel paper or negotiable documents may be perfected by filing. A security interest in money or instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5) of this section and subsections (2) and (3) of KRS 355.9–306 on proceeds.