**AMOCO OIL COMPANY, Plaintiff,**

**v.**

**Donald V. JOHNSTONE, Defendant.**

**No. IP 86-642-C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 9, 1987.

---

William P. Wooden, Julie L. Michaelis, Wooden, McLaughlin & Sterner, Indianapolis, Ind., for plaintiff.

Douglas G. Wagner, H. Kennard Bennett, Pollen, Brazill & Bennett, Indianapolis, Ind., for defendant.

## MEMORANDUM DECISION

NOLAND, District Judge.

The plaintiff Amoco Oil Company brought this action seeking a declaratory judgment that the plaintiff Amoco had properly terminated and/or nonrenewed a lease with the defendant Donald V. Johnstone pertaining to an Amoco station, and requesting that the Court order the defendant Johnstone to deliver possession of the Amoco station to Amoco. Amoco alleges that it offered to sell its interest in the Amoco station to Johnstone, and that despite negotiations by both sides, no contract for sale of the station by Amoco to Johnstone was ever formed. Johnstone, on the other hand, believed that a contract was formed. He was granted leave of court to amend his pleadings to include a counterclaim asking for specific performance directing Amoco to sell the station to Johnstone. Jurisdiction of the Court is found under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* ("PMPA"); the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.;* and the diversity statute, 28 U.S.C. § 1332. Trial of this action was to the Court on August 27, 1987. This Memorandum Decision is entered in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, which allows findings of fact and conclusions of law to appear in a memorandum of decision filed by the Court.

### I.

The facts established by the evidence presented by the parties are as follows. Amoco leases certain real estate at 86th Street and Westfield Boulevard in the northeast corner of such intersection known as 8601 Westfield Boulevard, Indianapolis, Indiana. Amoco improved such location as an Amoco gasoline service station and subleased such station to the defendant Johnstone pursuant to a written lease having a term from March 1, 1983 until February 28, 1986. Amoco's lease of the real estate will sometimes be referred to as the "Ground Lease" and the lease to Johnstone will sometimes be referred to as the "Dealer Lease." The Amoco service station located at 8601 Westfield Boulevard will be referred to as the "Amoco station."

Johnstone was represented in negotiations for the possible purchase by Johnstone of Amoco's interest in the Amoco station by his attorney, Christian B. Carisch ("Carisch"). Carisch negotiated with Amoco concerning the possible purchase by Johnstone of the Amoco station. Amoco's representative for negotiations concerning the station operated by Johnstone was one of its attorneys, Marguerite McDermed ("McDermed"). The subject of the negotiations included the sale of interests in real estate. By letter dated November 18, 1985, Amoco offered to sell to Johnstone its interest in the Amoco station and under the ground lease for approximately $112,000. Such offer originally required a written acceptance within 90 days, but the parties agreed to extend the time of such offer through March 31, 1986.

On March 24, 1986 Carisch had a conversation with McDermed in which he indicated that Johnstone was "interested" in purchasing Amoco's interest in the real estate for $68,000 together with the actual cost of refurbishing the underground storage tanks. At that time the parties did not agree on all the terms and conditions of the purchase of Amoco's interest in the real estate involved in the Amoco station. The unresolved items were:

a. The parties agreed on the amount of the earnest money deposit, $5,000.00, but never did agree upon the terms of an earnest money clause. The offer of Amoco on November 18, 1985 did not include any requirement of earnest mon-

ey, but the parties agreed to add this to the written documents.

b. Preparation by Amoco of closing documents and the review thereof by Carisch on behalf of Johnstone.

c. Whether the underground storage tanks at the Amoco station required refurbishment or whether such tanks would be removed.

Amoco in turn prepared closing documents and by cover letter of April 4, 1986 sent them to Carisch. The documents included a proposed "Real Estate Improvement Sales Contract" and a proposed "Assignment of Lease," which proposed to assign all of Amoco's right, title and interest in and to the Ground Lease to Johnstone.

In the April 4, 1986 letter from Amoco to Carisch, Amoco asked Johnstone's "intention" with respect to a separate case in litigation between him and Amoco. Amoco commented that it seemed "appropriate at this time to dispose of this case...." [1] None of the proposed closing documents sent by Amoco referred to this separate litigation, and Amoco did not state that a settlement of the separate litigation was any condition or requirement to any sale of its interest in the Amoco station to Johnstone.

The parties, through their representatives, further negotiated about the possible sale in a telephone conversation on April 25, 1986. Shortly before this telephone conference, Carisch learned of an appraisal of Amoco's improvements on the real estate showing that the improvements of Amoco had a value of $33,000. In the conversation on April 25, 1986, Carisch indicated that his client, Johnstone, had changed his mind about purchasing Amoco's interest in the real estate for $68,000 together with the actual cost of refurbish-

ing the underground storage tanks and offered, on behalf of Johnstone, to purchase Amoco's interest in the real estate for $33,-000 plus the actual cost of refurbishing the tanks. In that April 25, 1986 conference, Carisch stated that he was not involved in the MMP case and had no authority to discuss it.

McDermed and Carisch negotiated further concerning the possible sale on April 28, 1986. At that time, Carisch indicated that he did have authority to discuss the MMP case and that Johnstone would dismiss the MMP case if the purchase price for the Amoco station were reduced by $7,000 or $8,000. Carisch, on behalf of Johnstone, offered to dismiss the MMP case and to purchase Amoco's interest in the Amoco station for $25,000 plus the actual cost of refurbishing the tanks. Carisch further offered that, if there were no dismissal of the MMP case, Johnstone again offered to purchase Amoco's interest in the Amoco station for $33,000 plus the actual cost of refurbishing the tanks, as he had done in the April 25, 1986 telephone conference. Such offers on behalf of Johnstone were rejected by McDermed, on behalf of Amoco.

By letter dated April 28, 1986, Carisch proposed two additions and/or changes in the Real Estate Improvement Sales Contract, one of the documents submitted by Amoco to Carisch with the April 4, 1986 letter. The first change involved the second paragraph of the Real Estate Improvement Sales Contract. By this proposed change, Carisch rejected the "Assignment of Lease" proposed by Amoco with its April 4, 1986 letter. The testimony is undisputed that the terms of the assignment in the second paragraph as proposed by

---

1. The case to which Amoco made reference was determined to be an action styled *"Donald V. Johnstone,* Plaintiff *v. Amoco Oil Company,* Defendant, cause no. IP 84–1518–C," filed in this District Court. Judge Dillin entered his findings of fact and conclusions of law in that case on March 18, 1987, which was prior to the date of this trial. The effect of that judgment on this case will be discussed in section II herein.

The litigation was an action by Johnstone against Amoco in which he contested the validi-

ty of one of the franchise agreement documents with Amoco, an MMP (Meter Marketing Plan) rider which required certain deposits by the dealer to ensure the payment of petroleum products purchased by the dealer. If there were a sale of the interest of Amoco in the Amoco station to Johnstone, one of the details of the closing would be to return the MMP deposit for that station held by Amoco to Johnstone.

Carisch's letter of April 25 were never agreed upon.

The second change related to the terms and conditions of an earnest money clause. While the parties agreed on the amount of earnest money, $5,000, it is undisputed that the parties never did agree upon the terms of the earnest money clause proposed by Carisch in the April 28, 1986 letter.

By its letter of May 9, 1986 from Amoco to Johnstone, Amoco offered to sell on the basis of the documents submitted to Carish on April 4, 1986. Acceptance of such offer required signing the sales contract submitted on April 4, 1986 *and* submission of the earnest money deposit of $5,000 on or before May 15, 1986. While Johnstone did submit an earnest money check on or before that date, Johnstone did not then and has never signed the Real Estate Improvement Sales Contract or any of the other documents proposed by Amoco in its letter of April 4, 1986. The May 9, 1986 letter withdrew any consideration of the MMP litigation from the negotiations.

There was never an agreement reached between Amoco and Johnstone, through any offer made by Amoco, on all the essential terms and conditions of any contract for sale of Amoco's interest in the Amoco station.

Further, with regard to the defendant's counterclaim, there was never an agreement reached between Amoco and Johnstone, through any offer made by Johnstone, on all the essential terms and conditions of any contract for sale of Amoco's interest in the Amoco station. In count I of Johnstone's counterclaim, paragraph 12, Johnstone alleges and admits that Johnstone made an offer to purchase Amoco's interest. In paragraph 13 of count I, Johnstone alleges that Amoco "accepted" this offer between March 26, 1986 and April 4, 1986. The evidence is without dispute that there were no written or oral communica-tions between Amoco and Johnstone or Carisch in that period of time so that Amoco could not have accepted such alleged offer of Johnstone during such time period. Johnstone does not contend that the April 4, 1986 letter was any acceptance of Johnstone's alleged counter-offer. In addition, Johnstone failed to prove any damages in connection with his counterclaim. The only evidence on the subject showed that, to acquire the interest of Amoco and the interest of the landowner at the site of the Amoco station would cost $175,000 to exercise the option and $112,000 to purchase Amoco's interest, for a total of $287,000. The evidence showed that Johnstone secured an appraisal which showed the fair market value of all interests in the subject property was $233,000, so that if Johnstone acquired all interest in the real estate, he would sustain a loss of approximately $54,-000.

## II.

### A. *Issue Preclusion*

In the suit between these parties decided by Judge Dillin, Johnstone alleged that a franchise agreement provision, specifically a Meter Marketing Plan deposit provision, was void. Amoco contended that, with respect to the Amoco station on Westfield Boulevard, the relationship between Johnstone and Amoco at such station had been terminated or nonrenewed pursuant to the terms of the PMPA. Following the trial of such action, the Court entered a Final Judgment for Amoco and found that, with respect to the Amoco station at Westfield Boulevard, the issues as to the validity of the Meter Marketing Plan were moot, because the franchise relationship between Amoco and Johnstone at the Amoco station had been terminated or nonrenewed pursuant to the PMPA and Amoco's letter of November 18, 1985.[2]

2. In that case, the following findings of fact were made:

"1. On February 28, 1983, Amoco and Johnstone executed a Dealer Supply Agreement (DSA) and accompanying Meter Marketing Plan Rider (MMP) for each of two service stations.

"2. One such station is located at 8601 Westfield Boulevard, Indianapolis, Indiana, S.S. No. 10071–46 ("Nora Station"). The DSA and MMP for the Nora Station expired pursuant to the terms of the agreements on February 28, 1986.

"3. By letter dated November 15, 1985, Amoco gave Johnstone notice of its intention to

On the day this trial was held, on motion of the plaintiff, after hearing arguments of counsel and reviewing the record, the Court ruled that under the doctrine of issue preclusion, also known as collateral estoppel, the parties were precluded and estopped from re-litigating the issue of whether Amoco properly terminated its relationship with Johnstone in accordance with the provisions of the PMPA.

■ *Res judicata* is a broad and sweeping term which includes two doctrines concerning the preclusive effect of a prior adjudication. The first doctrine is claim preclusion or true *res judicata*. It states that once a judgment is rendered, no further relief may be accorded the same parties on the same "claim" or "cause of action." The second doctrine is issue preclusion, also known as collateral estoppel. Such doctrine prevents the re-litigation of issues and facts actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.*, 575 F.2d 530, 535–536 (5th Cir.1978), as cited in Wright, Miller & Cooper, *Federal Practice & Procedure* § 4402 (1981).

The United States Supreme Court has stated:

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel.... Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.... [c]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication. (Citations omitted.)

*Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980). Further, the Seventh Circuit has ruled that the application of collateral estoppel requires four elements:

1. The party against whom the estoppel is asserted was a party to the prior adjudication.

2. The issues which form the basis of the estoppel were actually litigated and decided on the merits.

3. The resolution of the particular issues was necessary to the court's judgment.

4. Those issues are identical to issues raised in the subsequent suit.

*County of Cook v. MidCon Corp.*, 773 F.2d 892, 898–899 (7th Cir.1985).

■ Using the above standards, this Court found that the parties in this case were precluded from re-litigating the issue of whether Amoco properly terminated its relationship with Johnstone regarding the Westfield station. The record indicates that a full and fair opportunity to litigate the issue existed in the prior described litigation, and that the issue was litigated and decided on the merits. The significance of the conclusion of law in the prior litigation is that the relationship between the parties had ended. This necessarily includes a determination, as stated in the findings of fact, that Amoco properly terminated its association with Johnstone regarding the service station in question. Because the issue and the parties are identical, and because a decision on the merits which was essential to the judgment was rendered, this Court held as a matter of law that the parties to this suit were precluded from relitigating this issue.

### B. *Contract Analysis*

■ Although Amoco and Johnstone negotiated about a possible sale, the parties never reached a written or oral agreement for the sale of Amoco's interest in the Amoco station to Johnstone. Johnstone did not accept any offer tendered by Amoco, and Amoco did not accept any offer ten-

---

terminate or nonrenew the parties' relationship with respect to the operation of the Nora Station in accordance with the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*"

In addition, the following conclusion of law was made:
"1. All issues involving the validity of the provisions of the Meter Marketing Plan (MMP) Rider for the Nora Station are moot."

dered by Johnstone. Regarding the testimony of the witnesses Carisch and McDermed on the issues involved, the Court finds the testimony of McDermed to be more credible. This Court finds as a matter of law that because there was no acceptance of an offer and no agreement on the essential terms involved in this negotiation, no contract was ever formed.

■ Further, the parties at all times contemplated that any sale of Amoco's interest in the Amoco station would be pursuant to written agreement signed by both parties. The Amoco offer of November 18, 1985 required an acceptance in writing. Carisch's letter of March 26, 1986 contemplated written documents which would be reviewed and signed by his client. Amoco's letter of April 4, 1986 sent proposed written documents for review by Carisch and signature by Johnstone. Carisch's letter of April 28, 1986 drafts proposed changes in the written agreements. Amoco's letter of May 9, 1986 required a signed agreement. The parties never completed the negotiation of written agreements and never signed any written agreements. Because the possible sale of Amoco's interest in the Amoco station involved the right to possession of the real estate, the right to use the buildings and driveways, the ownership of improvements and fixtures, and an option to purchase the real estate, interests in real estate were involved so that the Indiana Statute of Frauds was applicable. Even if the parties had reached an oral agreement as to the sale, such agreement would be unenforceable under the Indiana Statute of Frauds, I.C. § 32–2–1–1.

Amoco has demonstrated that it is entitled to the relief prayed for in its complaint. Johnstone has failed to prove that he is entitled to specific performance or is otherwise entitled to damages. This Court holds that the law is with Amoco and against Johnstone on both the plaintiff's complaint and the defendant's counterclaim. Accordingly, judgment shall be entered for Amoco and against Johnstone on both the plaintiff's complaint and the defendant's counterclaim. The defendant shall be ordered to deliver possession of the Amoco station to Amoco.

## JUDGMENT

This cause came before the Court for trial on August 27, 1987. The Court, having heard the evidence presented and the arguments of counsel, having filed its Memorandum Decision, and being duly advised in the premises, hereby ENTERS JUDGMENT in favor of the plaintiff Amoco Oil Company and against the defendant Donald V. Johnstone on the plaintiff's complaint, and hereby ENTERS JUDGMENT in favor of the plaintiff Amoco Oil Company and against the defendant Donald V. Johnstone on the defendant's counterclaim.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that JUDGMENT BE ENTERED herein in favor of the plaintiff on its complaint, and that the defendant take nothing by his counterclaim, and that costs be borne accordingly.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the plaintiff Amoco Oil Company is entitled to possession of the following described real estate, the Standard Service Station located at 8601 Westfield Boulevard, Indianapolis, Indiana, more particularly described as follows:

Part of the SE¼ of Sec. 13, T 17 N, R 3 E, more particularly described as follows: Beginning at the point of intersection of the S line of said ¼ Sec. and the Center line of State Road 431, also known as Westfield Road, said point being 713.5' E of the SW corner of said ¼ Sec.; running thence E in and along said ¼ Sec. line 360'; running then N 34 degrees 42' W 381.25' to a point in the center line of State Road 431 aforesaid; running thence S 24 degrees 33' W 344.5' to the place of beginning, containing in all 1.3 acres, more or less, subject however to all legal highways, there remaining net 0.63 acres.

The parties are directed to effect the transfer of possession of such real estate to

**184**

Amoco within fifteen (15) days of the date of this judgment.