# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022

Lyle W. Cayce
Clerk

No. 21-20326

U.S. Bank National Association, *as trustee for CSMC Mortgage-Backed Trust 2007-3*; PHH Mortgage Corporation, *individually as successor in interest to* Ocwen Loan Servicing,

*Plaintiffs—Appellees*,

*versus*

Josef M. Lamell, *also known as* J. M. Arpad Lamell,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2402

Before Stewart, Clement, and Elrod, *Circuit Judges*.

Per Curiam:

It is ORDERED that our prior panel opinion, *U.S. Bank National Association v. Lamell,* No. 21-20326, 2022 WL 1044055 (5th Cir. Apr. 7, 2022), is WITHDRAWN and the following opinion is SUBSTITUTED therefor.

No. 21-20326

It is further ORDERED that Appellant Josef Lamell's petition for panel rehearing is DENIED as MOOT.

\* \* \*

Edith Brown Clement, *Circuit Judge*:*

Appellant Josef Lamell has not made the monthly mortgage payment on his house for over a decade. Following the settlement of a protracted state court proceeding initiated by Mr. Lamell, Appellees United States Bank National Association (USBNA) and PHH Mortgage Corporation (PHH) filed a declaratory judgment action in federal district court. The Appellees sought declarations that (a) they were not time-barred from foreclosing on Mr. Lamell's property or collecting on the mortgage note; (b) they were entitled to pay taxes on the property; (c) they were entitled to non-judicial foreclosure; and (d) they were entitled to foreclosure under the theories of equitable and contractual subrogation.

The district court granted summary judgment in the Appellees' favor, and Mr. Lamell timely appealed. For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I.

In September 2006, Mr. Lamell refinanced the real property located at 5131 Glenmeadow Drive, Houston, Texas 77096. To do so, he executed a promissory note and a deed of trust, which granted a security interest in the property to Home123 Corporation (Home123). The deed of trust was assigned to USBNA in 2010, which is the current holder of the note and beneficiary of the deed of trust.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

In February 2010, Mr. Lamell defaulted on the loan.  That same month, he (pro se) filed a state court petition against the Harris County Appraisal District, its Review Board, and the Harris County Tax Assessor, alleging fraud-related claims arising from certain tax assessments and charges on his property.  In April 2010, the then-mortgage servicer of Mr. Lamell's property, CIT Bank, N.A. (CIT), sent Mr. Lamell a notice of default, demand to cure, and notice of intent to accelerate the loan.  In response, Mr. Lamell amended his state court petition to add CIT as a defendant.[1]  But he did not cure his default.

Because of Mr. Lamell's failure to cure, USBNA sent him a first notice of acceleration in June 2010.  In it, USBNA accelerated the maturity of the loan and declared the entire loan amount due and payable.  Over the next three years, USBNA sent Mr. Lamell at least five more notices of acceleration, all to the same effect.  But Mr. Lamell never cured his default.

In October 2013, CIT transferred its mortgage servicing rights to Ocwen Loan Servicing, LLC (Ocwen).  Between January and April 2014, Ocwen sent Mr. Lamell four separate mortgage account statements demanding less than the full amount of the accelerated loan.  Mr. Lamell still did not cure, nor did he pursue the mortgage foreclosure alternatives that Ocwen offered.

Five years later, in May 2019, Ocwen transferred the mortgage servicing rights to PHH.  Around that same time, there were several developments in the state court proceeding. First, Mr. Lamell supplemented his state court petition, seeking a declaration that any pending or future

---

[1] The "Amended 2009 Petition" purported to assert the following claims: "Violation of Due Process, Violation of Fair and Uniform Tax Appraisal, Fraud and Misrepresentation, Unlawful Tax Collection, Failure to Disclose, Conversion, and False Agency."

foreclosure or collection actions by CIT or its successors or assigns were time-barred. Second, the parties settled, releasing all claims and counterclaims that were part of the state court suit. Third, the state court entered final judgment on the parties' agreement, dismissing with prejudice all claims that were or could have been asserted.

On July 2, 2019, PHH sent a first notice of foreclosure to Mr. Lamell. The very next day, the Appellees commenced the present action in federal district court, seeking a declaratory judgment "to confirm that the Statute of Limitations does not prevent them from enforcing the Loan Agreement, that Defendant released any claims he may have had to bar the enforcement of the Loan Agreement, and for foreclosure so it may enforce its security interest in the Property." The Appellees also sought a declaration that they were equitably or contractually subrogated to the rights of prior lienholders. Mr. Lamell, again proceeding pro se, counterclaimed for both declaratory and monetary relief.

Despite the July 2, 2019 notice of foreclosure, Mr. Lamell still did not cure his default. So, in August 2019, PHH accelerated the loan. Meanwhile, the Appellees moved for summary judgment on their claims for declaratory relief.

The district court granted the Appellees' motion in part and denied it in part. It denied the Appellees' request for a declaration that they unilaterally abandoned their acceleration of the loan. *U.S. Bank Nat'l Ass'n as Tr. for CSMC Mortgage-Backed Tr. 2007-3 v. Lamell*, No. 4:19-CV-2402, 2021 WL 1133154, at *3–5 (S.D. Tex. Feb. 4, 2021), *report and recommendation adopted*, No. CV H-19-2402, 2021 WL 1141247 (S.D. Tex. Mar. 24, 2021). Specifically, it held that the Appellees failed to present sufficient summary judgment evidence of an unequivocal intent to abandon their prior accelerations. *Id.* at *5.

On the other hand, it granted the Appellees' request for a declaration that claim preclusion barred Mr. Lamell's statute of limitations affirmative defense, *id.* at *6–9; that the Appellees were entitled to non-judicial foreclosure, *id.* at *9–10; and that the Appellees were entitled to foreclose on Mr. Lamell's property under the doctrines of contractual and equitable subrogation, *id.* at *10–13.

Mr. Lamell then moved for a new trial under Federal Rule of Civil Procedure 59.[2]  At the same time, the Appellees moved to amend the judgment, asking the district court to enter summary judgment in their favor on the issue of abandonment of acceleration.  The district court denied both motions.

Mr. Lamell timely appealed the district court's summary judgment order and its order denying his motion for a new trial.  Mr. Lamell is pro se on appeal.

## II.

We review a district court's order granting a motion for summary judgment de novo, applying the same standard as the district court. *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Hyatt*, 843 F.3d at 177 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "We construe all facts and inferences in the light most

---

[2] The district court construed Mr. Lamell's motion as a Rule 60(b) motion for relief from a final judgment, order, or proceeding.

favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III.

### A.

This case hinges on whether the Appellees timely filed suit to foreclose on Mr. Lamell's property. The district court did not reach that issue, however, because it held that the state court order dismissing Mr. Lamell's action with prejudice was res judicata as to his statute of limitations affirmative defense. Considering the issue de novo, we disagree. *See Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 326 (5th Cir. 2006).

Texas preclusion law applies. *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020). Like federal law, Texas law creates two varieties of res judicata: (1) true res judicata, otherwise known as claim preclusion; and (2) collateral estoppel, otherwise known as issue preclusion. *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion bars "the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr*, 837 S.W.2d at 628.

The judgment that the Appellees contend has claim preclusive effect is the state court's consent decree dismissing with prejudice Mr. Lamell's action, which included his request for a declaratory judgment that the Appellees were time-barred from foreclosing on his property. The Supreme Court of Texas has not directly ruled on whether judgments dismissing claims for declaratory relief are entitled to claim preclusive effect. So, "we must make an '*Erie* guess' as to how [it] would rule upon the issue[.]" *Am.*

*Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (Elrod, J.).  To do so, we consider the following factors:

> (1) decisions of the [Supreme Court of Texas] in analogous cases, (2) the rationales and analyses underlying [Supreme Court of Texas] decisions on related issues, (3) dicta by the [Supreme Court of Texas], (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Texas courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Id.* (citations omitted).

The Supreme Court of Texas' first and only brush with the issue came in *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (per curiam).  The precise issue before the Court was "whether a dismissal with prejudice of a suit to declare a contract valid bars an action for a breach occurring after the dismissal."  *Id.* at 357.  It ultimately held that it did not. *Id.* at 359.  But in deciding that question, the Court first considered the issue more germane to our case: the preclusive effect, if any, that courts ought to afford judgments dismissing claims for declaratory relief.  *Id.* at 358.  In evaluating *that* question, the Court looked to comment c of Section 33 of the Restatement (Second) of Judgments, which provides:

> *Effects as to matters not declared.*  When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant

may pursue further declaratory or coercive relief in a subsequent action.

Based on the language of comment c, the Court suggested in dicta that judgments denying declaratory relief "without determining the matters presented . . . should not preclude subsequent claims or issues." *Id.* at 359.

There are no intermediary Texas appellate courts of which we are aware holding that res judicata applies to declaratory judgment dismissals. However, there are a handful of intermediary Texas appellate courts that have addressed a closely related question: whether judgments awarding only declaratory relief have claim preclusive effect in subsequent suits for coercive relief stemming from the declaratory judgment. *See, e.g.*, *CBS Outdoor, Inc. v. Potter*, No. 01-11-00650-CV, 2013 WL 269091, at *1 (Tex. App.—Houston [1st Dist.] Jan. 24, 2013, pet. denied) (mem. op.); *Alsheikh v. Arabian Nat'l Shipping Corp.,* No. 01-08-00007-CV, 2009 WL 884795, at *2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.); *Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 335 (Tex. Civ. App.—Dallas 1973, no writ).

Each recognizes "[a]n exception to the application of res judicata . . . when the original suit sought only a declaratory judgment."[3] *CBS Outdoor*, 2013 WL 269091, at *4; *Alsheikh*, 2009 WL 884795, at *2; *Valley Oil Co.*, 499 S.W.2d at 335. Quite a few other courts agree. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 56 (1st Cir. 2008)

---

[3] But as the *CBS Outdoor* court explained, *issue preclusion* would apply to prior declaratory judgment actions with respect to "what was actually considered and ruled on." *CBS Outdoor*, 2013 WL 269091, at *4 (citing *Alsheikh*, 2009 WL 884795, at *2).

(collecting cases from nineteen different states, as well as five federal cases applying state law and seven federal cases applying federal "common law").

Crucially, this exception applies even when the relief sought in the subsequent suit "could have been granted in the original action." *Alsheikh*, 2009 WL 884795, at *2 (quoting *State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66 (Tex. App.—Austin 2005, pet. denied)). In other words, as suggested by comment c of the Restatement, the traditional principle of merger at the heart of claim preclusion does not apply with equal force to claims for declaratory relief as it does to claims for coercive relief. *State v. Fuller*, 451 S.W.2d 573, 576 (Tex. Civ. App.—Beaumont 1970), *aff'd*, 461 S.W.2d 595 (Tex. 1970). That is because, unlike coercive relief, declaratory relief does not necessarily constitute the "full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *MJR's Fare of Dall., Inc. v. City of Dallas*, 792 S.W.2d 569, 572 (Tex. App.—Dallas 1990, pet. denied); *see also ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 955–56 (5th Cir. 2017) ("The whole point of a declaratory judgment action is to decide only a single issue in a dispute, one that is often preliminary as subsequent events will need to occur before a traditional lawsuit can be pursued.").

This very concept is baked into the Texas Uniform Declaratory Judgments Act (TUDJA), which provides: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." TEX. CIV. PRAC. & REM. CODE ANN. § 37.011. Such language implies that a declaratory judgment proceeding is not the end of the road with respect to the claim at issue; a plaintiff can still seek "further

relief" on that claim in a subsequent suit, even relief that would ordinarily be barred if the initial suit had been one for coercive relief.

And indeed, that is exactly what this court explained over four decades ago in *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530 (5th Cir. 1978). Because of *Kaspar Wire*'s similarity to our case, it is worth illustrating at length.

There, Kaspar sued Leco for patent infringement (Suit 1). *Id.* at 533. Leco then brought a declaratory judgment action against Kaspar, seeking a declaration that a different patent was invalid (Suit 2). *Id.* Suit 1 proceeded to trial, but before the court entered final judgment, the parties agreed to settle in exchange for Leco's agreement to dismiss Suit 2. *Id.* Kaspar later filed a third suit (Suit 3), this time for infringement of the patent that was the subject of Suit 2. *Id.* In Suit 3, Leco asserted the affirmative defense of patent invalidity. *Id.* Kaspar argued that the consent decree dismissing Suit 2 with prejudice was res judicata as to the validity of the patent at issue. *Id.* The district court disagreed, holding that the consent decree dismissing with prejudice Suit 2—the declaratory judgment action—did not bar Leco from contesting the patent's validity in Suit 3. *Id.* at 532–33.

We affirmed, holding that res judicata does not attach to a prior declaratory judgment action that was dismissed with prejudice via a consent decree, so long as it was not coupled with a request for coercive relief arising out of the same claim. *See id.* at 534–37; *ASARCO*, 858 F.3d at 955–56 ("[W]hen coercive claims are added to declaratory actions [arising from the same claim], the policy underlying the declaratory judgment exception must give way to the policy underlying traditional res judicata principles, namely,

to protect defendants and the courts from a multiplicity of suits arising from the same cause of action.") (internal quotation marks omitted).

Two aspects of our decision are noteworthy. First, we looked to the language of the federal Declaratory Judgments Act, which is identical in substance to TUDJA: "*Further* necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such judgment." *Kaspar Wire*, 575 F.2d at 537 (quoting 28 U.S.C. § 2202) (emphasis added). We explained that the supplementary nature of declaratory relief—as indicated by the statute's inclusion of the word "further"—"suggests the inappropriateness of applying rules of claim preclusion in the usual way [to declaratory judgments]." *Id.*

Second, we discussed the conceptual difficulties that arise when applying the traditional rules of claim preclusion to declaratory judgment proceedings—particularly when the declaratory judgment plaintiff's "claim" is, in reality, an anticipated defense repurposed as a declaratory judgment claim. *Id.* at 536. Applying claim preclusion in the usual way in that circumstance would theoretically permit clever litigants to anticipate suit, bring a future defense as a declaratory judgment "claim," and thereby preclude the would-be plaintiff from being able to bring her claim for coercive relief. *Id.* "Undoubtedly no court would sanction such a result." *Id.*

*Kaspar Wire* is our case, in a nutshell. Like in *Kaspar Wire*, Mr. Lamell's declaratory judgment "claim" was not really a claim at all; it was an "anticipatory defense to a potential claim." *Id.* Moreover, the declaratory judgment proceeding in *Kaspar Wire* ended in a dismissal with prejudice pursuant to a consent decree, just like Mr. Lamell's declaratory judgment proceeding. *Id.* at 537–38. Thus, *Kaspar Wire* counsels against applying res

judicata to the state court's consent decree dismissing Mr. Lamell's declaratory judgment action with prejudice.[4]

Granted, federal court decisions are not ordinarily our primary *Erie*-guess authorities. And the *Kaspar Wire* court applied the federal common law of res judicata, not Texas preclusion law. However, its underlying reasoning is persuasive and aligns with Texas authority on the question whether res judicata applies to declaratory judgment dismissals. We are convinced that, were the Supreme Court of Texas faced with the question, it would hold that declaratory judgment dismissals are not entitled to claim preclusive effect, so long as the declaratory judgment request was not coupled with a claim for coercive relief arising from the same cause of action.

## B.

Given that Mr. Lamell is not claim precluded from asserting his statute of limitations affirmative defense, we next address whether the Appellees are time-barred from bringing suit to foreclose.

In Texas, "[a] person must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a). Where, as here, the note or deed of trust contains an optional acceleration clause, a cause of action for foreclosure accrues when the holder exercises its

---

[4] To be sure, *Kaspar Wire* involved a standalone declaratory judgment claim, whereas Mr. Lamell's declaratory judgment claim was part of a larger case that also included claims for coercive relief. But that does not affect the outcome here. As previously explained, res judicata applies to declaratory judgments only when the claim for declaratory relief was coupled with claims for coercive relief *arising out of the same cause of action*. Mr. Lamell's request for a declaration that the Appellees were time-barred from bringing a foreclosure action was distinct from his claims for coercive relief, which arose out of allegedly improper tax assessments on his property, as well as various chain of title issues related to enforcement of the loan.

option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). It is undisputed that the Appellees accelerated the refinanced loan's maturity on June 4, 2010. It is equally undisputed that they did not bring suit to foreclose on Mr. Lamell's property within four years of that date.[5]

To avoid this statute of limitations dilemma, the Appellees asserted before the district court—and again before this court—that they abandoned their acceleration of the loan's maturity by sending four monthly statements to Mr. Lamell purporting to demand less than the full amount of the loan. The district court didn't buy their argument, holding that the Appellees had not presented sufficient summary judgment evidence of an unequivocal intent to abandon their prior accelerations. We agree.

It is well settled in this circuit that a lender can unilaterally abandon its prior acceleration of a loan by later requesting payment of less than the full amount of the loan. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015). But, critically, the request must "demonstrate an unequivocal manifestation of [the lender's] intent to no longer accelerate the loan." *Colbert v. Wells Fargo Bank, N.A.*, 850 F. App'x 870, 875 (5th Cir. 2021) (internal quotation marks omitted).

The weight of our precedent suggests that monthly statements demanding less than the full amount of a loan are not *alone* sufficient to constitute abandonment. *E.g.*, *Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 21-10766, 2022 WL 1171059, at *3 (5th Cir. Apr. 20, 2022); *Colbert*, 850 F. App'x at 875; *Lyons v. Select Portfolio Servicing Inc.*, 748 F.

---

[5] Mr. Lamell concedes in his brief that some tolling occurred, which pushed back the deadline to bring suit by around two years. Even accepting that as true, any such tolling is immaterial here.

App'x 610, 612 (5th Cir. 2019); *see also Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*, 755 F. App'x 354, 359 (5th Cir. 2018) (explaining that a lender's notice to a borrower that the loan can be brought current by payment of amount in arrears rather than the full accelerated amount is sufficient to constitute abandonment); *King v. Select Portfolio Servicing, Inc.*, 740 F. App'x 814, 818 (5th Cir. 2018) (lender's notice to borrower stating that borrower could avoid acceleration by remitting only amount in arrears was sufficient to constitute abandonment); *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x 302, 308 (5th Cir. 2018) (lender manifested unequivocal intent to abandon acceleration by requesting "only the amount overdue to cure the default" and advising borrower that it *would* accelerate in the future if default not cured); *see also Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679–80 (5th Cir. 2015) (account statements demanding less than the full outstanding loan amount, plus letter to borrowers explicitly stating that they could avoid acceleration by remitting payment of amount in arrears, constituted abandonment).

There is no dispute that the Appellees sent Mr. Lamell four monthly mortgage statements requesting an amount less than the full amount of the loan. But those are not enough, by themselves, to constitute abandonment as a matter of law. We agree with the district court that there is at least a genuine dispute of material fact as to whether the Appellees provided Mr. Lamell with requisite notice to reflect their *unequivocal intent* to abandon their prior accelerations.

## C.

Finally, we turn to the issue of subrogation. The district court held that the Appellees were entitled to foreclose under the doctrines of contractual and equitable subrogation because their predecessor in interest—

Home123, the original refinancing lender—advanced funds that were used to discharge existing liens on Mr. Lamell's property.

Subrogation actions do not carry a specific statute of limitations. *See, e.g.*, *Brown v. Zimmerman*, 160 S.W.3d 695, 700 (Tex. App.—Dallas 2005, no pet.). "Instead, [subrogation] actions generally are subject to the same statute which would apply had the action been brought by the subrogee." *Id.* (citing *Guillot v. Hix*, 838 S.W.2d 230, 233 (Tex. 1992)). Because the action at issue here is one for foreclosure, the Appellees' subrogation claims accrued when their foreclosure claims accrued—four years after the underlying loan's maturity.[6]

And a loan matures when it is accelerated. *See, e.g.*, *Howard*, 2021 WL 4236873, at *4; *Gen. Motors Acceptance Corp. v. Uresti*, 553 S.W.2d 660, 663 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) ("'Acceleration' is a change in the date of maturity from the future to the present."). Thus, absent abandonment of acceleration, the statute of limitations for Appellees' subrogation claims ran at the same time as it ran for their foreclosure claim.

Whether the Appellees have actionable foreclosure and/or subrogation claims is therefore an issue to be decided on remand, after the question of abandonment of acceleration has been resolved.

\* \* \*

Accordingly, we AFFIRM that part of the district court's order holding that a genuine dispute of material fact exists as to whether the

---

[6] The Supreme Court of Texas has not decided definitively which maturity date controls: that of the refinancing loan, or that of the original loan. In *PNC Mortgage v. Howard*, No. 05-17-01484-CV, 2021 WL 4236873, at *4 (Tex. App.—Dallas Sept. 17, 2021, pet. filed), the Texas Court of Appeals held that the refinancing loan's maturity date controls. PNC filed a petition for review of that decision in the Supreme Court of Texas, which remains pending.

No. 21-20326

Appellees abandoned their acceleration of the underlying loan's maturity. We REVERSE the district court's determination that Mr. Lamell is barred by res judicata from asserting his statute of limitations affirmative defense, as well as its determination that the Appellees are entitled to foreclosure under the theories of contractual and equitable subrogation. This action is REMANDED for determination of the abandonment, foreclosure, and subrogation issues and for further proceedings not inconsistent with this opinion.[7]

---

[7] In light of this holding, we need not rule on the district court's denial of Mr. Lamell's Rule 60(b) motion for a new trial.